STEVE EWING, Plaintiff-Appellee, v. LIBERTY MUTUAL INSURANCE COMPANY *et al.*, Defendants-Appellants.

Fifth District No. 5—84—0217

Opinion filed February 15, 1985.

W. A. Armstrong, of Mitchell & Armstrong, Ltd., of Marion, for appellants.

Jona Goldschmidt, of Carbondale, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Ewing filed a multicount complaint against appellant Liberty Mutual Insurance Company, alleging that Liberty and its insured, Ewing's employer, had acted in concert to cause damage to plaintiff by committing certain acts related to his on-the-job injury and workers' compensation recovery. A confusing procedural history is involved in this case, including the dismissal of two prior appeals concerning Ewing's complaint. Remaining for our consideration is the question of whether plaintiff's third count, a bad-faith action against Liberty, can be allowed to stand. The circuit court of Williamson County held that Ewing had stated a cause of action for breach of the duty of good faith owed by Liberty to Ewing and certified its ruling pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308). Because we believe that a substantial ground for difference of opinion exists in the court's ruling and that an immediate appeal may materially advance the ultimate termination of the litigation, we granted Liberty's petition for leave to appeal the denial of its motion to dismiss.

The allegations of the complaint can be summarized as follows:

Ewing was injured in April 1980 while performing his duties as a deliveryman for United Parcel Service, Inc. (UPS). He applied for and received workers' compensation benefits during treatment and convalescence for knee and leg injuries. In July 1981 Ewing was informed by an agent of UPS that no alternate employment position would be made available. The following month, at the direction of UPS, Ewing was examined by Dr. George Scheer, who had been retained by Liberty as the insurer of UPS to evaluate Ewing's condition and ascertain the extent of his disability. Scheer's opinion was that Ewing was able to return to his former position. Ewing balked, advising UPS that his treating physicians recommended that he should not resume his duties as a driver.

In September 1981 Ewing was advised by UPS that he must return to his former job or that his workers' compensation benefits would be terminated. On September 14, Ewing returned to the job and was reinjured that day while attempting to enter a UPS truck. Subsequent to this injury and during the course of negotiations relative to his workers' compensation claim, Ewing filed for unemploy-

ment benefits because he was unable to support his family. The application was actively resisted by UPS, who argued that Ewing could return to his delivery job. The protest was overruled in Ewing's favor.

Other events which gave rise to Ewing's lawsuit included the asserted practice on the part of Liberty and UPS of not rehiring employees who had filed workers' compensation claims or employees who sustained substantial injuries whether or not a claim was filed. In March 1982 an arbitration hearing took place to rule upon Ewing's grievance against UPS for not providing him with alternate employment, apparently in violation of a union contract. A UPS representative appeared at the hearing and falsely testified that Ewing was not disabled and could work at his former job. Ewing additionally complained that his request for Dr. Scheer's records was denied by UPS despite its knowledge that Ewing was investigating a malpractice claim against Scheer. Ewing's efforts to obtain the desired records were also frustrated by Liberty, and Ewing later learned that Scheer was a paid official of the insurer. All of these actions were said to be deliberate attempts to force Ewing's resignation or to compel him to resume his old job, and to have caused severe emotional distress and economic losses.

A fair reading of the complaint yields several allegations which purport to describe actionable conduct on the part of Liberty. Ewing complained that Liberty acted together with his employer to coerce him to resume a job which he was physically unable to handle by threatening him with loss of benefits. Ewing further asserted that the two companies jointly maintained a practice and policy of failing to rehire employees who had filed for workers' compensation benefits or who had sustained substantial injuries. Finally, Ewing charged Liberty with deliberately failing to honor his request for the medical records of the physician engaged by Liberty to examine Ewing and evaluate his condition. The complaint concludes that these actions amounted to a breach of Liberty's duty of good faith and fair dealing, and led to plaintiff's continuing loss of wages.

▪ A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle a plaintiff to recovery. (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61, 466 N.E.2d 224, 226.) We are required to interpret the allegations of the complaint in the light most favorable to the plaintiff and ascertain whether they are sufficient to state a cause of action. (*Curtis v. Birch* (1983), 114 Ill. App. 3d 127, 448 N.E.2d 591.) Stripping the instant complaint of conclusions and inferences,

we find no facts which can form the basis for a cause of action against Liberty under any theory advanced by Ewing.

The cause of action stated in the complaint and the most apparent theory of liability is tortious breach of good faith and fair dealing. Ewing relies on *Ledingham v. Blue Cross Plan for Hospital Care* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75. This court's decision in *Ledingham* has been criticized in subsequent appellate decisions, and there exists in the courts of this State a disagreement as to the existence and the limits of a "bad faith" action in light of the provisions of section 155 of the Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 767). It is unnecessary to decide here whether Liberty is statutorily protected from Ewing's charge of tortious misconduct, because the actions and events described in the complaint unequivocally fail to support a conclusion of bad faith on the part of Liberty.

Ewing's charges and imputations concerning Liberty are substantially premised upon the dispute involving the extent of his injuries and the resulting job status. Ewing sought and was denied alternative employment because his employer accepted the opinion of Liberty's medical expert, who evaluated Ewing's condition and, in contradiction to Ewing's chosen physicians, recommended that he was able to return to his former employment as a delivery person. The employer therefore advised the plaintiff that his benefits would be terminated and that he was required to return to his former position.

After Ewing did so and was reinjured, he negotiated through his attorney a full settlement of his workers' compensation claim, which was duly paid in a lump sum. Ewing did not allege that Liberty refused or delayed payments, or that the settlement which compromised the dispute related to the injuries was prejudicial, damaging, coerced, or unreasonably effected in any manner. Assuming for the sake of argument that Liberty is responsible for the employer's actions and decisions in this case, it cannot be charged with bad-faith conduct. Insurers operating under a duty of good faith and fair dealing remain entitled to exercise their rights in a legally permissible way. (*Fisher v. Fidelity & Deposit Co.* (1984), 125 Ill. App. 3d 632, 640, 466 N.E.2d 332, 339.) The employer and Liberty justifiably relied and acted upon the medical opinion in handling Ewing's claim and in negotiating a settlement of the *bona fide* dispute concerning his injuries and employment.

As to the allegations concerning the medical reports, we are persuaded by Liberty's arguments that the records remained available

to the plaintiff during the pendency of his workers' compensation dispute. Even if Liberty should be required to acquiesce in the plaintiff's demands for the records, Liberty's culpability in failing to do so does not amount to actionable misconduct.

■ Ewing alternatively urges that his complaint should be interpreted as stating a cause of action under section 138.4(h) of the Illinois Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.4(h)). That section provides:

"It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act."

In answer, we reiterate that the complaint lacks sufficient averments to state a cause of action for wrongful conduct, because by the plaintiff's own inferential admissions, each of Liberty's actions was effected pursuant to a justifiable course of conduct to compromise *bona fide* disputes, which were, in fact, settled.

Ewing's allegations cannot sustain a cause of action. The order of the circuit court is reversed, and the court is directed to dismiss Ewing's complaint.

Reversed and remanded with directions.

KASSERMAN and HARRISON, JJ., concur.