**Ruby FOSTER, Plaintiff,**

v.

**GLOBE LIFE & ACCIDENT INSURANCE COMPANY, Defendant.**

**Civ. A. No. GC 90–274–D–O.**

United States District Court, N.D. Mississippi, Greenville Division.

May 27, 1992.

---

George F. Hollowell, Jr., Greenville, MS, for plaintiff.

W. Scott Welch, John C. Henegan, H. Monty Simpkins, Jackson, MS, for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Defendant insurer Globe Life & Accident Insurance Company ("Globe Life") moves this court for summary judgment or in the alternative for partial summary judgment on the issue of punitive damages pursuant to Rule 56 of the Federal Rules of Civil Procedure. Original diversity jurisdiction rests with this court under 28 U.S.C. § 1332; plaintiff Ruby Foster is a citizen of Mississippi while defendant is a corporation organized under the laws of Delaware with its principal place of business in Oklahoma.[1] Finally, the amount in controversy exceeds $50,000.

Based upon a thorough review of the parties' pleadings, briefs, depositions, authorities, plaintiff's affidavit, and the record as a whole, the court hereby grants defendant's summary judgment motion in its entirety.[2] The court finds no genuine issue of material fact exists concerning defendant insurer's nonpayment of life insurance benefits. Therefore, plaintiff's breach of contract and bad faith claims against defendant are hereby dismissed with prejudice.[3]

### I. FACTUAL BACKGROUND AND SUMMARY

On September 20, 1987, defendant Globe Life issued a life insurance policy with a

---

**1.** Defendant Globe Life is authorized to do business within the state of Mississippi and qualified to do business in the state of Mississippi. (Pl.'s Compl. par. 4.)

**2.** In reaching its decision, the court is guided by the standard encompassed under Federal Rule 56(c): Summary judgment is rendered when the court is convinced that (1) no genuine issue of

material fact exists and (2) movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

**3.** Although not characterized or labeled as such, plaintiff's complaint is liberally construed as a tortious breach of contract claim.

face value of $14,706, covering the life of plaintiff's deceased husband, Jimmy Doyle Foster ("Foster"). Plaintiff is the named beneficiary under the policy. Among the policy's general provisions is a suicide exclusion clause, stating:

> If the insured, whether sane or insane, commits suicide within two years from the Date of Issue, we only refund the amount of the premiums already paid less indebtedness.

Foster's life ended on August 20, 1989, one year and 11 months after the policy issue date. Foster was discovered hanging from a bedroom door with one end of a knotted pair of electrical extension cords tied around his neck; the other end looped over the door and fastened to the door knob on the opposite side. No indications of a struggle, forced entry or foul play were evident. According to all official reports, Foster committed suicide. The State Medical Examiner's Report of Death Investigation, Foster's Certificate of Death and the Greenville Police Department Investigation Report all comport with the conclusion that Foster hanged himself and list ligature strangulation as the immediate cause of death.[4] While conducting its on-site investigation, the Greenville Police Department learned from plaintiff that Foster had attempted suicide on two prior occasions. (Greenville Police Department Report, attached to Def.'s MSJ as ex. 10.)

Asserting that Foster's suicide occurred within the two year period of exclusion, defendant insurer rejected plaintiff's claim for death benefits. Instead, defendant tendered a check in the amount of $584.38 (the amount calculated as premiums paid less any indebtedness) as the extent of its liability under the policy. Disputing suicide as the cause of Foster's death, plaintiff argues that defendant's refusal to honor her death benefit claim constitutes bad faith conduct. After defendant refused payment beyond refunding the premiums, plaintiff's counsel threatened "legal action ... includ[ing] punitive damages and damages for mental anguish," giving defendant a ten day ultimatum to issue a death benefit check. (Def.'s MSJ, ex. 7.) Despite plaintiff's demand for payment, defendant adhered to its earlier assertion that it was under no obligation to pay a death benefit since Foster's death was a suicide, occurring within the two year exclusionary period of the policy. As far as defendant was concerned, refunding the insurance premiums completely discharged its contractual duty.

Plaintiff maintains there is insufficient evidence to conclude her husband's death was a suicide or foreclose other explanations. To support her contention, she relies on the absence of a suicide note and her husband's love for life. (Deposition of Ruby Foster, July 8, 1991, p. 45.) She also notes no witnesses actually saw Foster slip the cord around his neck and commit suicide. Rather than suicide, plaintiff hypothesizes Foster's death is attributable to murder or even accident. In her deposition testimony, Foster claims that her psychic sister envisioned Foster's murder as it was happening. (Ruby Foster Dep., p. 45.) Based on consultations with her sister the psychic, plaintiff believes her husband was smothered with the pink towel found lying on the floor close to his body. The murderer, plaintiff opines, could possibly have been Charles Foster, a boarder in plaintiff's home who she contends was obsessively in love with her.[5] Besides Foster, plaintiff suspects that John Cochran, another boarder, murdered her husband.[6] Aside from her murder theories, plaintiff relies on the opinion of her expert witness,

---

4. See Foster "Certificate of Death" and State Medical Examiner's "Report of Death Investigation" attached to Def.'s MSJ as ex.'s 3 and 5 respectively.

5. Plaintiff's deposition testimony reads: "Charles Foster, he told everybody he was in love with me, that he was going to get rid of Jimmy someway, he was in love with me. So that's all I know."

6. While being deposed, plaintiff stated, "Two days before [my husband] died, [Cochran] made a statement he was going to kill somebody in a couple of days. Well, him and Jimmy had got in a fight that night [before his death] uptown, and he choked Jimmy." (Dep. of Ruby Foster, p. 45.)

Randall L. Thomas, a psychologist. In Thomas' opinion, "there is not enough information to conclude that in fact [Foster] committed suicide although certainly that is a possibility." (Pl.'s Resp. Def.'s MSJ, ex. 6.)

Advancing an alternative argument, plaintiff insists the two year suicide exclusion period had lapsed before her husband's August 20, 1989 death, making the suicide clause inapplicable. Plaintiff represents she and her husband understood through Globe's insurance agent, Robert Dear, that the policy took effect on August 8, 1987, the date the insured signed the application form and paid the first premium, rather than the issue date, September 20, 1987. Therefore, she claims, the two year exclusionary period ended on August 8, 1989, twelve days prior to her husband's death.

The life insurance application contains language stating:

> This application and first premium are offered to the Company as a consideration for and shall be a part of any policy issued. The insurance applied for *shall not become effective until the date this application is approved in the Home Office of the Company* and the first premium paid during the life of the insured.

(emphasis added) The applicant signature line is designated, "Signature of *Proposed* Insured." (emphasis added) Plaintiff alleges Dear would not permit her or Foster to read the application before her husband signed as the proposed insured. Moreover, she asserts, Dear failed to mention anything about the suicide exclusion. (Afft. Ruby Foster, November 15, 1991.) She claims to have relied solely on Dear's alleged oral representations.[7]

7. Defendant has moved to strike the affidavit of Ruby Foster, alleging it raises issues of apparent authority not found in the original complaint. *See* Def.'s Memo. Brief Supp. Mtn. to Strike Pl.'s Afft., p. 2 ("Complaint *does not allege* Globe Life's Agent ever told Foster ... effective date of policy was date of application[.]"). For reasons discussed later in this opinion, the court hereby denies defendant's motion to strike.

Aside from chronic unemployment, the factual record reveals Foster suffered from alcohol abuse, a source of frequent marital discord between him and plaintiff. On the morning of his death, Foster asked plaintiff for some liquor and she refused the request. (*Id.* at 56.) Similar exchanges often ended in argument. In fact, plaintiff told Foster that if he did not stop drinking, their marriage would end. (Dep. of Ruby Foster, p. 90.)

Foster sporadically received counseling and treatment for his drinking problem at the Veterans Administration (VA) hospital in Jackson, Mississippi. Besides alcoholism, Foster was being treated for rectal bleeding at the VA. (Greenville Police Department Report, attached as ex. 10 of Def.'s MSJ.) Prior to his death, Foster had been in the VA on three separate occasions and had been scheduled to return for further treatment on the day after his death reported as suicide. Staying in the VA depressed Foster. (Dep. of Ruby Foster, p. 111–112.)

## II. LEGAL DISCUSSION

### A. Punitive Damages

Given the facts at hand, the court concludes punitive damages are nonrecoverable and readily dispenses with the issue at the onset of its legal discussion and analysis. "Ever since" the Mississippi Supreme Court handed down *Standard Life Ins. Co. v. Veal*, 354 So.2d 239 (Miss.1977), both Mississippi state and federal courts sitting in diversity suits have "grappled with the problem of" whether the issue of punitive damages is a jury question. *Pioneer Life Ins. Co. of Illinois v. Moss*, 513 So.2d 927, 929 (Miss.1987). It is evident from the Mississippi jurisprudence evolving from *Veal* that an insurance company with a legitimate or arguable reason for refusing to pay a claim is not subject to punitive damages.[8] *Veal*, 354 So.2d at 248 (Miss.

8. The *Veal* court actually affirmed a punitive damages award, finding an intentional wrong. Nevertheless, the case is the archetype for the proposition that "if an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie." *Id.* at 248.

1977). At one time, the Fifth Circuit interpreted *Veal* "to mean that if the carrier offers no justifiable reason or arguable basis ... for denying a claim, the issue of punitive damages must be submitted to the jury." *Bankers Life & Casualty Co. v. Crenshaw*, 483 So.2d 254, 271 (Miss.1985), *citing Black v. Fidelity & Guaranty Insurance Underwriters*, 582 F.2d 984, 990–991 (5th Cir.1978); *Vogel v. American Warranty Home Service Corp.*, 695 F.2d 877 (5th Cir.1983). Taking the Fifth Circuit's analysis one step further, the Mississippi Supreme Court reasoned if insurers were without a justifiable or arguable basis for denying a claim, then "the requisite intent or gross negligence necessary for the recovery of punitive damages could be inferred." *Crenshaw*, 483 So.2d at 271. In the later case of *Moss*, 513 So.2d at 930, however, the Mississippi Supreme Court held differently. Mississippi state law still provides that punitive damages cannot be imposed on an insurance carrier where an "arguable defense" exists. *Peel v. American Fidelity Assur. Co.* 680 F.2d 374, 376 (5th Cir.1982); *see Henderson v. United States Fidelity & Guaranty Co.*, 620 F.2d 530 (5th Cir.), *cert. denied*, 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980). The converse, however, is no longer true; lack of a legitimate or arguable reason for refusing to pay a claim does not necessarily expose an insurer to punitive damages. *See Moss*, 513 So.2d at 930, *citing State Farm Fire and Casualty Co. v. Simpson*, 477 So.2d 242 (Miss.1985) (insurer's lack of legitimate or arguable reason for denying claim "does not automatically lead to conclusion that issue of punitive damages should be submitted to jury"); *Blue Cross & Blue Shield of Mississippi, Inc. v. Maas*, 516 So.2d 495, 497 (Miss.1987) ("[C]onverse [of *Veal*] does not follow."). In the absence of an arguable reason for denying a claim, the trial court conducts a separate inquiry to determine if a jury question exists concerning whether the insurer committed a willful or malicious wrong, or acted with gross negligence or reckless disregard for the claimant's rights. *Blue Cross & Blue Shield of Mississippi, Inc. v. Maas*,

516 So.2d at 497; *see National Life & Accident Insurance Company v. Miller*, 484 So.2d 329, 336 (Miss.1985); *Moss*, 513 So.2d at 930. If answered in the negative, "the question of punitive damages should not go to the jury." *Id.* at 930.

*Moss* clarified much of the confusion concerning when punitive damages presents a jury question based on the "legitimate or arguable reason standard." *Id.*

> "[L]egitimate or arguable reason," although spawning much comment in our cases ... is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort ... *heightened torts [as distinguished from ordinary torts, i.e., forgetfulness, oversight, clerical error] are the product of gross, callous or wanton conduct* ... (citation omitted) (emphasis added)

*Moss*, 513 So.2d at 930, *quoting Simpson*, 477 So.2d at 250.

■ Sitting in a diversity suit, this court is *Erie*[9] bound to apply the substantive law of Mississippi as it presently exists. *United States v. Little Joe Trawlers Inc.*, 776 F.2d 1249 (5th Cir.1985). Following current case law of the Magnolia state, the court is of the opinion that defendant's refusal to satisfy plaintiff's insurance claim did not constitute gross negligence or bad faith. Given the particular facts and circumstances of the instant case, no reasonable juror could conclude that defendant lacked a "legitimate or arguable reason for denying [plaintiff's life insurance] claim." *Moss*, 513 So.2d at 930, *citing, Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell*, 466 So.2d 833 (Miss.1984). By all official accounts, the insured committed suicide. A two year suicide exclusion was among the general provisions of the policy Globe Life issued on Foster. Foster's death fell within the exclusionary period, measured from the policy's date of issue. Thus, the defendant insurer had a legitimate reason to deny plaintiff's life insurance claim. Globe Life was acting "well within its rights under the exclusionary

9. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

provisions of [Foster's] policy ... there was simply no 'bad faith' issue" for the trier of fact. *Blue Cross & Blue Shield of Mississippi v. Campbell,* 466 So.2d 833, 841 (Miss.1984).

■ Having found an arguable basis for defendant's refusal of payment, the court's inquiry concerning punitive damages is complete. Even assuming that defendant was without a legitimate reason or arguable basis, the court's decision regarding punitive damages would remain unchanged.

> In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule.

*Veal,* 354 So.2d at 247, *quoting Fowler Butane Gas Co. v. Varner,* 244 Miss. 130, 150–51, 141 So.2d 226, 233 (Miss.1962); *see Consolidated American Life Insurance Co. v. Toche,* 410 So.2d 1303, 1304 (Miss. 1982). In conducting an exhaustive review of the summary judgment evidence, the court finds nothing in the record even hints "of gross, callous, or wanton conduct on the part of [Globe Life] that would present a jury question on punitive damages." *Moss,* 513 So.2d at 931. Insurers operating under a duty of good faith and fair dealing, are not precluded from exercising their legal rights. *Ewing v. Liberty Mutual Insurance Company,* 130 Ill.App.3d 716, 729, 86 Ill.Dec. 35, 37, 474 N.E.2d 949, 951 (1985), *citing Fisher v. Fidelity and Deposit Co. of Maryland* 125 Ill.App.3d 632, 640, 80 Ill.Dec. 880, 886, 466 N.E.2d 332, 339 (5th Dist.1984). Having completed its discussion of plaintiff's punitive damages claim, the court next considers whether a reasonable juror could conclude from the evidence presented that Foster's death was not a suicide.

**B. Suicide**

■ The evidence overwhelmingly demonstrates that Foster committed suicide. *Mutual Life Insurance Co. of New York (MONY) v. Douglas,* 356 So.2d 1145, 1150 (Miss.1978). "The record is replete with evidence that the circumstances surrounding the insured's death were inconsistent with an accident" or murder. *Pope v. Travelers Insurance Company,* 477 F.2d 557, 558 (5th Cir.1973). *See also Charney v. Illinois Mutual Life,* 764 F.2d 1441 (11th Cir.1985) (no question that insured died by his own hand; plain and unambiguous policy language should control). All of the official investigative reports attribute Foster's death to suicide. Nothing in the record undermines the investigative findings or questions the validity of the official reports. The insured was in a depressed state, anticipating a scheduled appointment at the VA in Jackson, where he had been receiving treatment for alcoholism and rectal bleeding. Although somewhat inventive, the alternative scenarios plaintiff paints to explain her husband's death are nothing more than pure speculation and imagination, bordering on sheer fantasy with no probative force. Although the court does not weigh the probative value of the material presented, *Jones v. Western Geophysical Company of America,* 669 F.2d 280, 283 (5th Cir.1982), evidence without any probative force is insufficient to create a genuine issue. *Pope v. Mississippi Real Estate Commission,* 695 F.Supp. 253, 262 (N.D.Miss.1988), *aff'd,* 872 F.2d 127 (5th Cir.1989). Summary judgment is not defeated with mere conclusory allegations and conclusions unsupported by specific facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986); *Broadway v. City of Montgomery, Alabama,* 530 F.2d 657, 660 (5th Cir.1976); *see also Benton–Volvo–Metairie, Inc. v. Volvo Southwest, Inc.,* 479 F.2d 135, 139 (5th Cir.1973). While plaintiff's representations that her husband "loved life" and "would have said good-bye ..." if he was leaving (Pl.'s Resp. Def.'s MSJ, ex. 6.) may provide her with some personal consolation, they do not serve to avoid summary judgment. Furthermore, the tales of psychic visions portraying her husband's death as a murder are similarly insufficient.

Equally unpersuasive is the psychological autopsy of Foster, prepared by plain-

tiff's expert witness, Randall L. Thomas.[10] (Def.'s MSJ, ex. 13.) Based largely on plaintiff's perception that Foster was not "the type of individual who would commit suicide," Thomas' report essentially reiterates plaintiff's emotional responses and conclusions, quoting her repeatedly about her husband's love for life and the mutual love she and the deceased shared. The court fails to glean even slight probative value from Thomas' expert opinion. His opinion is "pure speculation" and does nothing to assist the trier of fact in the least. *Christopherson v. Allied–Signal Corporation*, 939 F.2d 1106, 1114 (5th Cir. 1991); *see Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1123–24 (5th Cir.1988) (expert's opinion lacked probative value because it was pure speculation). In contrast to the "significantly different" evidence contained in the record, the court is of the opinion that plaintiff's expert opinion is insufficiently reliable to be of probative value. *Christophersen*, 939 F.2d at 1115, fn. 13.

## C. Apparent Authority

 Under the law of agency as applied in Mississippi, "a principal is bound by the actions of an agent within the scope of that agent's real or apparent authority." *Nichols v. Shelter Life Insurance Company*, 923 F.2d 1158, 1162 (5th Cir.1991), *quoting Andrew Jackson Life Insurance Co. v. Williams*, 566 So.2d 1172, 1180 (Miss.1990). To recover, under an apparent authority theory, a three prong test must be met. *Williams*, 566 So.2d at 1181. Plaintiff must demonstrate: (1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance. *Williams*, 566 So.2d at 1181 and citations therein. Advancing an agency argument, plaintiff claims there is an issue concerning the apparent authority of the

life insurance agent who solicited her husband's application. As part of her response to defendant's motion for summary judgment, plaintiff claims she relied on the oral representations of Globe Life agent, Robert Dear, that the policy took effect when her husband signed the application form, August 8, 1987. Plaintiff's remaining chance to defeat summary judgment rests in her assertion that the policy took effect on the application date; an effective date of August 8, would remove Foster's death from the two year suicide exclusion period by twelve days. If, on the other hand, the two years are measured from the policy issue date, September 20, 1987, Foster's suicide (August 20, 1989) occurred precisely one month before the period lapsed. .

Defendant asserts in its Motion to Strike Plaintiff's Affidavit, plaintiff failed to raise an apparent authority issue in her complaint; thus, the insurer argues her subsequent affidavit is irrelevant. It appears that defendant is indirectly arguing plaintiff has waived the issue of apparent authority. Assuming defendant is raising a waiver argument, the court disagrees.[11] Accordingly, defendant's Motion to Strike Plaintiff's Affidavit is denied. Although it is somewhat vague and amorphous, plaintiff's complaint is construed as a claim for life insurance proceeds; construed liberally, plaintiff's claim of entitlement to death benefits serves as an assertion against applying the suicide exclusion.

 In considering her affidavit as part of the summary judgment evidence, however, the court is of the opinion that plaintiff fails to meet the apparent authority three-prong test. The alleged oral representations of the agent, Robert Dear, are insufficient to vary the plain, obvious and unambiguous language of the Globe Life insurance application form. The face of the

---

**10.** Even if Thomas' report was in sworn form as an affidavit, *see Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187 (5th Cir.1991), it would not change the court's opinion.

**11.** The Federal Rules of Civil Procedure do not require a plaintiff to plead every element of a

cause of action so long as a defendant has been given adequate and fair notice of the nature of the claim and the basis for it. 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 p. 154 (2nd ed. 1990).

application states in part "[t]he insurance applied for *shall not become effective until the date this application is approved in the Home Office of the Company* ... (emphasis added).[12] Rather than "hidden in "highly technical" ... complicated and voluminous language," *Nichols*, 923 F.2d at 1163, *quoting Williams*, 566 So.2d at 1192, the wording appears above the signature line delineated, "Proposed Insured," on a one page application sheet. Giving the words of the application their plain and ordinary meaning, it would appear that the application date is insignificant as an effective date for the policy.

■ Even assuming hypothetically that Dear's representations were sufficient to alter the contractual terms and bind his principal, defendant Globe Life, plaintiff fails to meet the two remaining prongs of the apparent authority test. The court has "searched the record in vain for any indication that [plaintiff] relied to her detriment on [Dear's] statement." *Ford v. Lamar Life Insurance Co.*, 513 So.2d 880, 889 (Miss.1987). Plaintiff has neither alleged nor proved that either she or her husband changed their respective positions in reliance on Dear's representations. In reviewing the application, it appears Foster did not forfeit other coverage to obtain insurance with defendant Globe Life. Responding to question twelve of the Globe Life application, "Life insurance in force," Foster replied, "none." To find Foster detrimentally relied on Dear's representation of August 8 as the effective date of the policy, a reasonable juror would have to conclude the insured planned the exact date of his suicide two years in advance. In spite of evidence in the record of Foster's depression, illness, unemployment, marital problems, and two prior attempted suicides, reasonable minds would agree it is highly improbable that the insured was contemplating committing suicide precisely two years from the date he signed an application for life insurance. An order in accor-

dance with this memorandum opinion will issue.

---

**12.** *See Barhonovich v. American National Insurance Co.*, 947 F.2d 775 (5th Cir.1991) (insurance contract "on its face" made reliance on misrepresentations unreasonable.)