**John McFADDEN, M.D., Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY and Benchcraft, Inc., Defendants.**

**Civ. A. No. WC 91–91–D–D.**

United States District Court, N.D. Mississippi, W.D.

Oct. 7, 1992.

---

John B. Clark, Robert J. Arnold, III, Daniel Coker Horton and Bell, Jackson, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

### I. INTRODUCTION

Disposition of the above-captioned case follows orders of dismissal from Chief Judge L.T. Senter in two other lawsuits filed by either plaintiff, Dr. McFadden, or his patient, James McCullough, against a different workers' compensation provider, American Motorist Insurance Company ("American"): *McFadden v. American Motorists Insurance Company*, Civ. Act. No. EC90–203–S–D (N.D.Miss. September 6, 1991) and *McCullough v. American Motorist Insurance Company*, Civ. Act. No. WC91–37–S–D (N.D.Miss. August 30, 1991). In his previous suit, plaintiff charged American with tortiously refusing to pay him for the medical care and treatment of McCullough, an employee allegedly entitled to workers' compensation benefits under a workers' compensation policy, which American issued to McCullough's employer at the time, Universal Furniture Company.[1] McCullough's suit against American complained of tortious "termination of his workers' compensation benefits in retaliation for, among other things," selecting "Dr. McFadden as his treating physician." *McCullough*, supra at 1. Both cases were dismissed, as neither party had met the requirement of exhausting the available administrative remedies. Although McCullough had initiated proceedings before the MWCC, no decision had been issued. Thus, the court concluded that McCullough had not "fully exhaust[ed] his administrative remedies" before the Mississippi Workers' Compensation Commission ("MWCC"), and could not, therefore, pursue a "lawsuit for bad faith" *McCullough*, supra at 7.

As to plaintiff's action, Judge Senter would not permit Dr. McFadden to bypass the MWCC either. Unlike his patient,

Jim Waide, Luther C. Fisher, IV, Tupelo, Miss., for plaintiff.

---

**1.** Benchcraft, Inc. is a division of Universal Furniture Industries, Inc.

plaintiff had launched no campaign to collect payment for his medical services through a MWCC proceeding, although he had brought ancillary claims before the agency in other past instances. *McFadden*, supra at 2. Instead, he proceeded directly to state court, whereupon American removed his action against it pursuant to 28 U.S.C. § 1441, *et seq.* In view of plaintiff's complete avoidance of an administrative remedy, the court was in no position to even possibly "entertain any action for bad faith refusal to pay workers' compensation benefits." *McFadden*, supra at 4.

In his third attempt to have the court hear his bad faith claim, plaintiff is on somewhat better footing, though it remains shaky. At least this time, the administrative phase is finished. It is evident, however, that plaintiff learned no valuable lessons from the two prior dismissals; the good doctor filed no ancillary claim for payment with the MWCC in precedence to the instant suit against defendant Liberty Mutual Insurance Company ("Liberty Mutual") for alleged bad faith refusal to pay. Only plaintiff's patient McCullough sought preliminary relief through a MWCC proceeding,[2] in which he successfully recovered payment for all his medical bills, including those incurred while under plaintiff's care. Consistent with the MWCC outcome, defendant Liberty Mutual remitted payment to plaintiff for his services rendered to McCullough.

With the payment issue settled, it is obvious that plaintiff's larger concern throughout the payment controversy has been to obtain a court ruling on his bad faith allegations. Assuming that administrative proceedings were still underway, the court

opines that plaintiff would not allow that fact to deter him from pursuing his bad faith claim. When presented to the Senter court, the issue was not ripe for decision. Making its latest appearance in the adjacent chambers of the undersigned, the issue has advanced to a level where it can now be addressed. In the wake of all the evidence and authority before the court, it appears that plaintiff lacks the requisite standing for advancing a bad faith claim against defendant carrier. Moreover, even if the court assumes plaintiff possesses standing to sue, defendant's refusal to pay for plaintiff's services carries no bad faith connotations. Set out below is the court's opinion.

## II. PROCEDURAL AND FACTUAL BACKGROUND

James McCullough, age twenty-seven, injured[3] his back on the job as an upholstery worker for Bench Craft, Incorporated, a division of Universal Furniture Industries, Incorporated, located in New Albany, Mississippi. At the time of McCullough's accident, August 11, 1987, Benchcraft held workers' compensation insurance coverage with defendant Liberty Mutual. McCullough was initially seen by Dr. Russell, who referred him to Dr. Eckman, an orthopedic specialist with a practice in Tupelo, Mississippi. (Plaintiff's Telephone Deposition of David Hart, March 16, 1992, pg. 24.) Ultimately, McCullough sought treatment from Dr. Engelberg, a neurosurgeon in Memphis who hospitalized[4] him and surgically removed one of his discs.[5] Following his surgery and postoperative treatment,[6] McCullough was released by Dr. Engelberg on December 7, 1987 and allowed to "re-

---

2. The sequence of events is discussed in detail, later in this opinion.

3. McCullough sustained injuries when "[h]e picked up a sofa by himself and developed lower back and left lower extremity pain." (Dr. Engelberg's patient history on McCullough, attached as "exh. E" to "Pl.'s Resp. to Defs.' MSJ").

4. McCullough was admitted to the Baptist Memorial Hospital, Memphis, Tennessee, on August 28, 1987; he was discharged from the facility on September 4, 1987.

5. The surgery revealed "a herniated second disc, from the bottom." (Engelberg discharge summary, attached as "exhibit E" to "Pl.'s Resp. to MSJ").

6. Dr. Engelberg recommended a walking and back exercise regiment for plaintiff to commence September 9, 1987, the date his surgical staples were removed.

sume his work." (Engelberg's medical file on McCullough at 9 (of unnumbered pages) attached as "exh. E" to MSJ Resp.) In Engelberg's opinion, he had reached maximum medical improvement. (Hart Dep. at 26; MWCC Transcript of *McCullough v. Benchcraft & Liberty Mutual*, Wkrs' Comp. No.: 87–11671–D–3211, attached to "Pl.'s Resp. to Defs.' MSJ" as "exh. I." [7])

On December 8, 1987, the very next day after his release from the care of Dr. Engelberg, McCullough made his "first visit to the Tupelo Pain Clinic," *see* Defendants' Deposition of John W. McFadden, M.D., March 12, 1992, pg. 83, attached as "exh. E" to Defs.' MSJ, on referral from Jim Waide (plaintiff's counsel in the instant matter). *Id.* at 86. When requested by Waide to authorize plaintiff's treatment of McCullough, defendant Liberty Mutual refused. (Hart Dep. at 26.) In a letter to Waide, dated December 22, 1987, defendant's claims department advised him, "We will not pay for" McCullough to visit plaintiff, "a family practitioner[,]" ... after being "released by a neurosurgeon." ("Exh. 1" of Hart Dep., "exh. D" of MSJ.) The defendant insurer issued similar correspondence to plaintiff, advising him that it "would not pay for his medical treatment rendered to [McCullough]...." ("Exh. 2" of Hart Dep., "exh. D" of MSJ.)

On the basis of defendant's refusal to pay McCullough's medical bills from plaintiff, McCullough petitioned the MWCC to order payment.[8] His case was heard before an ALJ, who ordered defendant to cover the cost of McCullough's treatment from plaintiff.[9] This prompted defendants to appeal to the Commission, which affirmed the ALJ in an order issued on December 10, 1990. *McCullough*, 87–11671–D–3211 (Commission Order attached as "exh. H." to Defs.' MSJ.) Rather than appeal the Commission's ALJ affirmance to the Mississippi Supreme Court, defendants complied with the order and paid McCullough's bills from plaintiff on December 21, 1990.[10]

Despite receiving full payment for his services rendered to McCullough, plaintiff filed an action for compensatory[11] and punitive[12] damages against defendants in the Circuit Court of Union County, Mississippi on June 15, 1991.[13] (Complaint at 1.) Shortly thereafter, the case was removed to this court, via 28 U.S.C. § 1441, at defendant insurer's behest and co-defendant employer's joinder.[14] Pursuant to Fed.

---

7. When asked at the compensation hearing why he didn't seek further treatment from Dr. Engelberg, McCullough informed Administrative Law Judge ("ALJ") Willie L. Rose, [Dr. Engelberg] "told me he couldn't do nothing [sic] else for me." MWCC Tr. at 64.

8. Aside from payment of plaintiff's medical fees, an estimated $2,256.00, McCullough sought a permanent partial disability award. As McCullough's disability award is not an issue in plaintiff's suit, it is not mentioned in any of the court's references to the workers' compensation hearing.

9. On September 15, 1989, the ALJ issued an order that the "employer and carrier ... pay all medical bills claimant incurred as a result of his injury of August 11, 198[7]." *McCullough v. Benchcraft and Liberty Mutual*, MWCC No. 87–11671–D–3211 (September 15, 1989) (attached as "exh. F" to MSJ and "exh. I" to Pl's. Resp. thereto). On defendants' motion for clarification of his order, the ALJ issued an amended order on October 13, 1989, stating that defendants "[p]ay all medical bills claimant incurred as a result of his injury of August 11, 1987, including ... the medical bills charged by Dr. John McFadden." *McCullough*, 87–11671–D–

3211 (October 13, 1989) (amended order of ALJ Willie L. Rose).

10. Although payment issued from the defendant insurer, it was on behalf of defendant employer. Therefore, both defendants are considered as paying plaintiff's fees.

11. (loss of interest due to the delay in payment).

12. Plaintiff seeks an award of punitive damages, based on defendants' "bad faith refusal to pay medical benefits." (Compl. at 1.)

13. Plaintiff's, "Brief in Opposition to the Motion for Summary Judgment," erroneously states that the complaint was filed "in the Circuit Court of Lee County, Mississippi...." The record as maintained by the clerk of the court indicates the suit originated in Union County.

14. Original diversity jurisdiction rests with this court pursuant to 28 U.S.C. § 1332. Plaintiff physician is a citizen of Mississippi, residing in Lee County. Defendant Liberty Mutual, meanwhile, is a Massachusetts corporation with its principal place of business in the Bay state. Furthermore, the amount in controversy exceeds $50,000.

R.Civ.P. 56(c), defendants move this court for summary judgment; in support thereof, defendants offer plaintiff's lack of standing to bring an independent tort claim of bad faith. If, for hypothetical purposes, plaintiff's standing is assumed, defendants alternatively argue that the existence of a legitimate arguable basis for denying payment absolves them from plaintiff's bad faith lawsuit. Both of the arguments which defendants collectively assert are correct.[15] Accordingly, summary judgment relief against plaintiff is appropriate.[16] Arrival at this conclusion is the result of an extensive, detailed and thorough examination of the parties' pleadings, briefs and authorities cited therein, numerous pages of deposition testimony, affidavits, the court's own research and the record as a whole. With the utmost confidence, the court hereby grants summary judgment in defendants' favor. Set out below is the opinion of the court.

## III. LEGAL DISCUSSION

### A. *Ancillary Claimant Standing to Sue for Payment*

Albeit without an express statutory provision, *see* Miss.Code Ann. § 71–3–15, Mississippi law undoubtedly affords medical providers a means through the MWCC to recoup fees for treating work-related injuries of employees entitled to workers' compensation insurance benefits. Consistently, the Commission holds that physicians and the like [17] have standing to assert ancillary actions for payment.[18] Furthermore, an ancillary claimant's standing does not hinge on whether the employee-patient files a petition to controvert with the Commission. The only standing prerequisite is notice to the employer; once the injured employee notifies the employer of the work-related injury, an ancillary claimant has standing. *See Redwine v. City of Coffeeville,* MWCC No. 83–07194–C–4952 (June 13, 1985); *Hill v. Butane Gas Co.,* MWCC No. 82–10525–C–4955 (June 17, 1985) (Ancillary Claimant William F. Johnson, chiropractor, entitled to file and prosecute action against patient's employer and employer's insurer for payment of charges for treating injured worker).

Apart from Commission rulings, it is evident from Mississippi case law that healthcare providers may file claims for payment of services rendered to injured workers: "[W]hoever may succor the injured employee by providing hospital and medical care shall be paid therefor." *Mandle v. Kelly,* 229 Miss. 327, 90 So.2d 645, 649 (1956). The landmark Mississippi Supreme Court case of *Mandle* supports the proposition set forth in Dunn's Treatise that "Those rendering aid to an employee and for whose services payment is authorized by the [Mississippi Workers' Compensation] Act ... may independently file and prosecute claims. These include hospitals, doctors and others." Vardaman S. Dunn, Mississippi Workers' Compensation § 368 (3rd ed. 1982).

Payment, however, is not the issue in this case; plaintiff's medical charges are already satisfied.[19] The question which the court presently addresses is of a slightly different vein. As plaintiff's opposition brief succinctly states, "The issue in this case ... is not ... the right of a physician to pursue his own claim before the Mississippi Workers' Compensation Commission." (Pl's Brief Opp. MSJ, p. 13.) The parties

---

**15.** The validity of defendants' primary argument negates the need to reach their alternative line of reasoning; nevertheless, the court discusses both in turn.

**16.** In reaching its decision, the court is guided by the standard encompassed under Federal Rule 56(c): Summary judgment is rendered when the court is convinced that (1) no genuine issue of material fact exists and (2) movant[s] [are] entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

**17.** I.e., chiropractor.

**18.** *But Cf.* 2 Larson, The Law of Workmen's Compensation, Section 61.12(k) (1989) (physician lacks independent standing to make claims within the [workers'] compensation system, unless statute expressly creates such right) (footnote omitted).

**19.** Above and beyond payment, plaintiff seeks an award of punitive damages for defendants' alleged bad faith conduct. (Compl. at 2.)

agree, physicians have the right to do so.[20] "Rather, the issue is whether [a] physician also may file suit [against the employer and the insurer] for the independent tort of bad faith ... refus[al] ... to pay...." The undersigned concludes he may not.

### B. *Independent Tort Claims of Bad Faith—Who Has Standing to Sue?*

#### 1. *The Duty of Good Faith*

■ Parties to an insurance contract are expected to deal with each other in good faith. McCarthy, Recovery of Money Damages for Bad Faith, § 1.7 (pg. 23) (5th ed. 1990). The expectation arises from the implied covenant of good faith and fair dealing underlying every contractual agreement. *Id.* When the insurer contracts with the insured, "a special relationship[21] of trust arises" wherein the insurer assumes a duty "to deal fairly and in good faith with [its] insured." *Scheffey,* 828 S.W.2d at 790. A breach of this duty may give rise to an independent tort action for bad faith. *Cf. Grenada Steel Industries, Inc. v. Alabama Oxygen Co.,* 695 F.2d 883 (5th Cir.1983) (insurer may, as a matter of law, be considered the fiduciary of its insured).

The Mississippi Workers' Compensation Act contemplates a three-party agreement among the employer, the employee and the compensation insurance carrier. Although the employer is considered to be the insured party, the Act views the employee as the intended beneficiary of the insurance contract. Thus, "when [the employer-insured] contracts with an insurer for the benefit of" its employee-third party beneficiary, "the insurer ... owe[s] the same duty ·to the designated third party as it" owes to the insured, "the [entity actually] making the contract." *Scheffey,* 828 S.W.2d at 791. The above analysis is consistent with the relatively recent decisions of the Mississippi Supreme Court that extend a workers' compensation insurer's obligations of good faith and fair dealing to employees of the insured party. *See Southern Farm Bureau Cas. Ins. v. Holland,* 469 So.2d 55, 58–59 (Miss.1985) (exclusivity provision of Workers' Compensation Act no bar to independent tort action by ... employee against insurance carrier for bad faith refusal to pay medical and other compensation benefits). *Cf. Luckett v. Mississippi Wood Inc.,* 481 So.2d 288, 290 (Miss.1985) (*Holland* holding permitting employee to sue carrier extended "to include a bad faith refusal action against the employer, as well as the carrier...."). *But cf. Butler v. Nationwide Mutual Ins. Co.,* 712 F.Supp. 528, 529 (S.D.Miss.1989) (insurance agents cannot be sued for bad faith refusal to pay nor can they be subjected to implied duty of good faith and fair dealing).

As an incidental third party beneficiary under the insurance contract between defendants (the insurer and employer), plaintiff asserts the same status as the insured's employee. In his opposition brief, plaintiff states, "There is no basis for distinguishing the injured worker, who is not a party to the contract, from the physician, who is not a party to the contract." Pl.'s Opp. Brief at 13–14. In his estimation, the *Holland* and *Luckett* decisions encompass all third party beneficiaries of the contract between the defendants for workers' compensation insurance. His assertion is unpersuasive. Moreover, it is unsupported.

---

**20.** In ·his prior action, *McFadden v. American Motorists Insurance,* No. EC90–203–S–D (September 6, 1991) plaintiff's position was au contraire. There, before Judge Senter, "[h]e allege[d] that he, as [a] treating physician, ha[d] no statutory or 'rule-made' remedy before the MWCC[.]" For ·want of an administrative course of action, plaintiff presumably was forced to litigate his claim. *Id.* at 3. His argument was rejected. The court is amused by plaintiff's sudden switch of gears. His choice to forgo an ancillary proceeding in this instance similar to the last leads to the conclusion that he still adheres to his earlier position. Fortunately for him, the administrative phase of this case is over. Otherwise, he may have been faced with his third dismissal.

**21.** "The special relationship arises from the unequal bargaining power of the parties and the nature of the insurance contract that would allow an unscrupulous insurer to take advantage of its insured['s] misfortunes when bargaining for settlement or resolution of claims." *CNA Insurance Company v. Scheffey,* 828 S.W.2d 785, 790, 791 (Tx.Ct.App.1992).

The *Holland* opinion supplies ample reason for distinguishing the third party beneficiary status of the injured employee from that of the plaintiff physician.

> The employee's right to sue the carrier for intentional torts has been upheld on several grounds. First, in committing intentional torts, the insurance carrier ceases to be the "alter ego" of the employer. Rather, *the carrier is involved in an independent relationship with the employee when committing tortious acts. Gibson v. National Ben Franklin Ins. Co.*, 387 A.2d 220, 222–23 (Me.1978); *Martin [v. Travelers Ins. Co.],* 497 F.2d 329, 330–331 (1st Cir.1974); *Stafford v. Westchester Fire Ins. Co. of New York, Inc.*, 526 P.2d 37 (Alaska 1974); *Unruh v. Truck Ins. Exchange*, 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972); *Coleman v. American Universal Ins. Co.*, 86 Wis.2d 615, 273 N.W.2d 220, 223 (1979).

*Holland*, 469 So.2d at 58 (emphasis added).

Plaintiff's opposition brief cites *Holland* and *Luckett* for much more than what the two cases hold. Both decisions strictly address an employee's claim for bad faith and malicious refusal to pay workers' compensation benefits, not a treating physician's. Plaintiff McFadden conveniently overlooks the Mississippi court's rationale for permitting an employee to assert an independent tort claim against his employer's insurer. For all intents and purposes, the employee is a primary party to the contract with standing to assert an independent tort claim. *See Travelers Insurance Company v. Savio*, 706 P.2d 1258, 1272 (Colo.1985) (covered employee stands in same position as insured in workers' compensation insurance contract). In contrast, a treating physician is merely an unintended third party creditor beneficiary of the contract. Moreover, his status is merely derivative. *Cf. Larson*, supra, § 61.12(k). Although they may directly benefit, as a class, treating physicians are not intended beneficiaries of the MWCA. Miss.Code Ann. § 71–3–15. Consequently, no special relationship exists between plaintiff physician and defendant workers' compensation insurer. Nothing in either of the Mississippi Supreme Court opinions indicates or even suggests that the holdings apply to doctors or other medical providers; nonetheless, plaintiff contends they do; he is simply wrong. The dearth of law in Mississippi (or elsewhere for that matter) to support plaintiff's reasoning permits no other conclusion. Based on the narrow holdings of *Holland* and *Luckett*, the court cannot lend credence to plaintiff's argument. Operating under diversity jurisdiction, this court is *Erie*[22] bound to apply the substantive law of Mississippi as it presently exists, not as it may in the future. *United States v. Little Joe Trawlers Inc.*, 776 F.2d 1249 (5th Cir.1985). To date, no Mississippi Supreme Court cases hold that physicians who treat injured workers possess standing to sue compensation carriers for bad faith refusal to pay. Making its best *Erie* guess, the undersigned is of the opinion that the high court of the Magnolia state, would disallow an injured employee's treating physician to proceed with an independent tort claim of bad faith for lack of standing.

### 2. Plaintiff–Physician Lacks Standing to Assert Independent Bad Faith Tort Claim As Unintended Third Party Creditor Beneficiary

Ordinary contract defenses apply in a bad faith action. Thus, a plaintiff must have standing to bring the action. Richard D. Williams, Bad Faith Litigation: Emerging Trends in 1987 and Beyond, 420 PLI/Comm 9 (March 1, 1987). Finding no explicit Mississippi case law on physician standing, the court looks elsewhere within the Fifth Circuit for authority on the subject of physician standing to sue a patient's employer's workers' compensation carrier. A decision from the Texas Court of Appeals, *Scheffey*, 828 S.W.2d at 791, offers persuasive guidance.

To a large extent, the facts in *Scheffey* are analogous to those operating in the case at bar. Despite their different specialties, McFadden and Scheffey both are phy-

**22.** *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

sicians.[23] Like plaintiff, "Scheffey's practice includes treatment of injured workers [of] employers [with] workers' compensation insurance coverage...." *Id.* at 787. His argument somewhat echoes plaintiff's theory: Scheffey claimed he was "in such close nexus with the injured employees that he [was] entitled to the same status as a third party beneficiary to the insurance contract." *Id.* at 791. Noting that "Texas court[s do not] extend[ ] the insurer's duty of good faith and fair dealing to persons in Scheffey's position[,]" the court of appeals for the Lone Star state ruled, "[Dr.] Scheffey did not have any special relationship with [the workers' compensation insurer], and he was not a person to whom [the insurer] owed a duty of good faith and fair dealing." *Id.* Furthermore, because he was neither "an insured [n]or an intended beneficiary of the insurance policy[,]" *see Chaffin v. Transamerica Ins. Co.*, 731 S.W.2d 728, 731 (Tex.Ct.App.1987), the Texas court determined that Scheffey lacked standing to sue under a state statutory provision, "Article 21.21–2, commonly called the Unfair Claim Settlement Practices Act." *Scheffey*, 828 S.W.2d at 791. The outcome in *Scheffey* supports the result of this case.

Before turning to defendants' alternative argument, the court briefly addresses the policy considerations that lead it to conclude plaintiff lacks standing to bring a bad faith cause of action against defendants.

### 3. Public Policy Argument Against Third Party Claims Against Insurers

A majority of states agree that third party claimants may not state a cause of action for bad faith against insurers. L. Neal Ellis, Jr., Et Al., Commercial Torts: 1989 Developments, 25 TILJ 228 (1990). An insurer's duty of good faith does not extend to third party-claimants. *Id.* (citing *O.K. Lumber Co. v. Providence Washington Insurance Co.*, 759 P.2d 523 (Alaska 1988).

Before overruling its landmark decision in *Royal Globe v. Superior Ct.*, 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979), the California Supreme Court permitted third party bad-faith actions against a tortfeasor's insurer. Although *Royal Globe* dealt with motor vehicle insurance and personal injury actions, its reversal is significant to third party bad faith claims in a workers' compensation context.

California learned that "affording third party claimants a right of action against insurers had social and legal implications far beyond its expectations" when the state's supreme court handed down *Royal.* Ellis, supra at 228. The 1979 decision lead to "undesirable social and economic effects," *see id.*, including a plethora of bad faith claims. *Moradi–Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 250 Cal.Rptr. 116, 126, 758 P.2d 58, 68 (1988) (overruling *Royal*, 592 P.2d at 329). Giving third party claimants standing creates other problematic results, in particular, "a conflict of interest for the insurer who must not only protect the interests of its insured but also must safeguard its own flanks from attacks by third parties." *Moradi*, 250 Cal.Rptr. at 125, 758 P.2d at 67.

To allow unintended incidental third party beneficiaries standing to assert third party independent tort claims against insurers does not, in the opinion of the court, advance the overriding public interest. The Supreme Court of California learned the hard way "that affording third-party claimants a right of action against insurers" produces sheer chaos. Ellis, supra. Already, three of plaintiff's bad faith law suits against different workers' compensation carriers have arrived in federal court. Giving third-party claimant physicians standing to bring independent bad faith tort claims would open the door to an onslaught of endless litigation whenever a medical care provider received anything less than the full charge requested of the compensation carrier. Absent an express ruling on physician standing from the Mississippi Supreme Court, the undersigned

---

**23.** While Dr. Scheffey is an orthopedic surgeon, Plaintiff McFadden is actually a board certified pediatrician, who no longer practices pediatrics. (McFadden Dep. at 47.)

declines to set this frightful scenario in motion.

### C. Defendants Had a Legitimate Arguable Reason To Deny Payment of Plaintiff's Claims

Even assuming plaintiff possesses the requisite standing to assert an independent tort claim of bad faith for punitive damages, defendants' decision to deny payment is based upon a legitimate and arguable reason.

#### 1. Punitive Damages

■ Under the substantive law of Mississippi, by which we are bound in this diversity case, *see Peel v. American Fidelity Assurance,* 680 F.2d 374, 376 (5th Cir. 1982), an insurance company with a legitimate or arguable reason for refusing to pay a claim is not subject to punitive damages. *Standard Life Co. v. Veal,* 354 So.2d 239 (Miss.1977);[24] *see Henderson v. United States Fidelity & Guaranty Co.,* 620 F.2d 530 (5th Cir.1980), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *Michael v. National Security Fire & Casualty Co.,* 458 F.Supp. 128, 131 (N.D.Miss.1978). Therefore, in bad faith litigation, courts first look for an arguable reason to justify the insurer's failure to pay an insurance claim. *Blue Cross/Blue Shield of Mississippi v. Maas,* 516 So.2d 495, 497 (Miss.1987).[25]

> "[L]egitimate or arguable reason," although spawning much comment in [court] cases ... is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort ... *heightened torts [as distinguished*

*from ordinary torts, i.e., forgetfulness, oversight, clerical error] are the product of gross, callous or wanton conduct* ... (citation omitted) (emphasis added)

*Pioneer Life Insurance Company of Illinois v. Moss,* 513 So.2d 927, 930 (Miss. 1987), *quoting State Farm Fire and Casualty Co. v. Simpson,* 477 So.2d 242, 250 (Miss.1985). An examination of the record indicates defendants were not without a legitimate or arguable reason for denying payment of plaintiff's medical services. The difference of approaches toward a proper course of medical treatment gave defendants a legitimate arguable reason to deny payment of plaintiff's medical services. The difference in opinion of two doctors over a patient's condition constitutes a legitimate, arguable reason or basis for rejecting a claim for medical treatment. *See Horton v. Hartford Life Insurance,* 570 F.Supp. 1120, 1124 (N.D.Miss.1983) (difference in opinion between two doctors' diagnosis of a claimant's condition sufficient to bar punitive damages).

In light of current case law in the Magnolia state, defendant Liberty Mutual had a legitimate arguable reason to refuse to pay for plaintiff's medical fees. The insurer based its decision to decline paying for any treatment administered by plaintiff to McCullough on the prognosis of Dr. Engelberg, the neurosurgeon whom plaintiff chose to perform his disc surgery. According to Engelberg, McCullough had reached maximum medical improvement. A post operative CAT scan "look[ed] quite good." (Engelberg's office file, Pl's Opp., "exh. E.") To alleviate the pain associated with McCullough's spondylolisthesis[26], a condition which he suffered from before his

---

**24.** The *Veal* court actually affirmed a punitive damages award, finding an intentional wrong. Nevertheless, the case is the archetype for the proposition that "if an insurance company has a legitimate or arguable reason for refusing to pay a claim, punitive damages will not lie." *Veal,* 354 So.2d at 248.

**25.** The absence of an arguable reason does not necessarily establish that punitive damages will lie. *Maas,* 516 So.2d at 497. When an insurer is without an arguable reason, the court conducts a separate inquiry concerning whether the insurer acted with malice or with gross negligence or reckless disregard for the rights of

others. *Id.; see National Life and Accident Insurance Company v. Miller,* 484 So.2d 329, 336 (Miss.1985). If answered in the negative, punitive damages are not a question for the trier of fact. *Pioneer Life Insurance Company v. Moss,* 513 So.2d 927, 930 (Miss.1987).

**26.** Websters Third New International Unabridged Dictionary (1965) defines spondylolisthesis as: "forward displacement of a lumbar vertebra and especially of the fifth lumbar vertebra on the sacrum producing pain by compression of nerve roots."

operation, Dr. Engelberg reasoned, "[T]he only thing [he can] do is walk." *Id.* While recognizing that McCullough's bilateral spondylolisthesis would continue to cause him some trouble, Dr. Engel nevertheless explained to McCullough, "What could be done has been done." *Id.* Finding that McCullough had reached maximum medical improvement, Dr. Engelberg released him on December 7, 1987, to return to work, recommending that he continue with the prescribed walking and exercise program. Further visits would be on an as needed basis.

Despite Engelberg's prognosis, McCullough sought and received treatment from plaintiff immediately following his release from the care of Dr. Engelberg. Based on the medical opinions and representations of Dr. Engelberg, defendants questioned the necessity and reasonability of further treatment. Furthermore, defendants viewed plaintiff as insufficiently qualified to treat McCullough, in comparison to Dr. Engelberg, a board certified neurologist who conducted McCullough's operation. According to the telephone deposition testimony of defendants' corporate representative, defendants' concerns relate to plaintiff's practices; some of the procedures plaintiff follows "are ... [un]accepted by orthop[aedists] as ... valid diagnostic tool[s]." (Hart Dep. at 28.) For instance, the caudal injections plaintiff administers require "a high degree of specialty" and "should be done by[ ] neurosurgeons...." (Hart Dep. at 28.) Having found an arguable basis for defendants' refusal of payment, the court's inquiry concerning punitive damages is complete.

■ Even assuming that defendants were without a legitimate reason or arguable basis, the court's decision regarding punitive damages would remain unchanged.

> In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule.

*Veal,* 354 So.2d at 247, *quoting Fowler Butane Gas Co. v. Varner,* 244 Miss. 130, 150–51, 141 So.2d 226, 233 (1962); *see Consolidated American Life Insurance Co. v. Toche,* 410 So.2d 1303, 1304 (Miss.1982). In conducting an exhaustive review of the summary judgment evidence, the court finds nothing in the record even hints "of gross, callous, or wanton conduct on the part of [Liberty Mutual] that would present a jury question on punitive damages." *Moss,* 513 So.2d at 931. Insurers operating under a duty of good faith and fair dealing are not precluded from exercising their legal rights. *Ewing v. Liberty Mutual Insurance Company,* 130 Ill.App.3d 716, 729, 86 Ill.Dec. 35, 37, 474 N.E.2d 949, 951 (1985), *citing Fisher v. Fidelity and Deposit Co. of Maryland,* 125 Ill.App.3d 632, 640, 80 Ill.Dec. 880, 887, 466 N.E.2d 332, 339 (5th Dist.1984). An order in accordance with this memorandum opinion shall issue.