## Taylor v. Nationwide Insurance Co.

*Marc S. Katz,* for plaintiff.
*Thomas A. McDonnell,* for defendant.

WETTICK, *J.,* October 6, 1997—Eric J. Larmi, an insured under a Nationwide automobile policy, was injured in a motor vehicle accident. He obtained treatment for his injuries from Jack Taylor, a recognized chiropractic rehabilitation doctor. Nationwide has refused to pay for a portion of the treatment that Dr. Taylor provided, apparently on the ground that it was medically unnecessary. In this lawsuit, Dr. Taylor has sued Nationwide because of its refusal to pay for the entire medical treatment that he furnished. In Count I of his complaint, Dr. Taylor seeks to recover the remaining amount of his bill plus interest at 12 percent and attorney's fees under provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq. Counts II and III of Dr. Taylor's complaint raise bad faith claims based on the Judicial Code, 42 Pa.C.S. §8371, which provides for interest on the award of the claim in an amount equal to the prime rate plus three percent, an award of punitive damages, and the assessment of attorney's fees.

Nationwide has filed preliminary objections in the nature of a demurrer to the bad faith claims. Nationwide contends that 42 Pa.C.S. §8371 is not applicable because Dr. Taylor is not its insured and section 8371 covers only claims brought by an insured.

## I.

The issue of whether section 8371 covers claims raised by a medical provider for treatment provided to a person injured in a motor vehicle accident does not arise unless section 8371 applies to lawsuits to

recover first-party benefits under the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq.

The Financial Responsibility Law includes remedies that apply when an insurance company unreasonably denies first-party benefits, including the award of counsel fees, interest, costs, and triple damages. 75 Pa.C.S. §§1716, 1797(b), and 1798. These remedies differ from the remedies provided for in section 8371 of the Judicial Code.

Insurance companies argue that there is a conflict between the Financial Responsibility Law and section 8371. Consequently, section 8371 should not apply to any claims governed by the Financial Responsibility Law under the rule of statutory construction which provides that the special provision shall prevail and be construed as an exception to the general provision when a special provision in a statute conflicts with a general provision in another statute. 1 Pa.C.S. §1933. Insureds, on the other hand, cite the portion of the same rule of statutory construction which states that, whenever possible, a court shall give effect to the general provisions which appear to govern the matter along with the more specific provisions which clearly govern the matter. In 1992, in *Knox v. Worldwide Insurance Group,* 140 P.L.J. 185 (1992), I ruled that an insured could seek remedies based on both the Financial Responsibility Law and section 8371 because the goals of the Financial Responsibility Law are furthered by allowing the insured to obtain the additional remedies provided under section 8371 upon a showing of bad faith.

As I will discuss, no Pennsylvania appellate court rulings have resolved this issue. There are several federal court cases decided after *Knox* which support the position of the insurance companies that section 8371

does not apply to first-party benefit claims. See *Bennett v. State Farm Fire & Casualty Insurance Co.,* 890 F. Supp. 440 (E.D. Pa. 1995), and cases cited therein. But see, *Schwartz v. State Farm Insurance Co.,* 1996 W.L. 189839 (E.D. Pa. 1996), which relied upon my *Knox* (sub nom. *Pipchok v. State Farm Ins. Co.*) ruling in reaching the opposite result. Nothing in the federal court opinions that have reached the opposite position has caused me to change my position on this issue. I continue to believe that the *Knox* ruling carries out the goals of the legislature expressed in the Financial Responsibility Law and section 8371.

Following my decision in *Knox,* two panels of the Pennsylvania Superior Court have considered the issue of whether section 8371 claims may be based on an alleged bad faith failure to pay first-party benefits. In an opinion authored by Judge Hester in *Okkerse v. Prudential Property and Casualty Insurance Company,* 425 Pa. Super. 396, 625 A.2d 663 (1993), issued on May 4, 1993, the Superior Court considered the propriety of a dismissal of a section 8371 count on the grounds that (1) section 8371 claims may not be raised where the insurance contract was issued prior to the effective date of section 8371 and (2) section 8371 claims may not be raised for failure to pay benefits allegedly due under the former Pennsylvania No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, 40 P.S. §§1009.101 et seq., because of a potential conflict with the remedies provided by the two Acts. As to the first issue, the court held that section 8371 applies where the alleged bad faith refusal to pay benefits occurred after the effective date of section 8371. As to the second issue, the court ruled that the statutes are not in conflict so the insured may raise

claims under both the No-Fault Act and section 8371. In its opinion, the court cited with approval a federal court case (*Seeger v. Allstate Insurance Co.,* 776 F. Supp. 986 (M.D. Pa. 1991)) which held that section 8371 did not conflict with the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. Judge Hester concluded that the federal court's rationale applied to the *Okkerse* case because section 1716 of the Pennsylvania Motor Vehicle Financial Responsibility Law "is a reenactment of the provisions of the No-Fault Act at issue herein." *Okkerse, supra* at 403, 625 A.2d at 667. In his opinion, Judge Hester stated that:

"We concur [in] this analysis. The allowance of punitive damages does not irreconcilably conflict with the allowance of attorney's fees and interest under the relevant provisions of the No-Fault Act. Furthermore, appellee may be determined to be entitled to interest and attorney's fees under sections 1009.106 and 1009.107 of the No-Fault Act since he supplied "reasonable proof" of damages while not being entitled to damages under section 8371 if no bad faith conduct is present. The fact that appellee has the potential for recovering under both sections is not a reason for dismissing the count under section 8371.

"However, to the extent that both provisions are determined to apply in this action and result in a different calculation of interest and attorney's fees, the two statutes will be in conflict. In that case, however, the provisions of *section 8371* must prevail. Section 8371 was enacted as part of Act 1990-6, P.L. 11 on February 7, 1990. Section 31(c) of Act 1990-6 provides, "All other acts and parts of acts are repealed insofar as they are inconsistent with the act." Under 1 Pa.C.S. §1933,

the provision enacted later prevails if it is the manifest intent of the general assembly that it should. Section 8371 was enacted later than the No-fault Act and this repealer section indicates that the general assembly intended it to prevail over any inconsistent statutes." *Id.* at 403-04, 625 A.2d at 667.

In an opinion of the Superior Court authored by Judge Wieand in *Barnum v. State Farm Mutual Automobile Insurance Co.,* 430 Pa. Super. 488, 635 A.2d 155 (1993), *rev'd,* 539 Pa. 673, 652 A.2d 1319 (1994), issued on December 16, 1993, the insured raised claims against State Farm for first-party benefits under the Motor Vehicle Financial Responsibility Law. State Farm submitted medical bills for a peer review evaluation; the peer review organization determined that certain medical treatment was unnecessary and State Farm refused to pay these charges. Without seeking a reconsideration of the determination of the peer review organization, the insured filed an action against State Farm. His complaint included a claim under section 8371. State Farm filed preliminary objections in the nature of a demurrer in which it contended that (1) the action should be dismissed because the insured had failed to exhaust his statutory remedies by his failure to request reconsideration of the peer review evaluation and (2) the provisions of section 8371 were inapplicable to a claim for first-party benefits under the Motor Vehicle Financial Responsibility Law. The trial court agreed and dismissed the claim. The insured appealed.

The Superior Court initially addressed the issue of whether the insured could pursue this appeal because of his failure to seek a reconsideration of the peer review determination. The court ruled that the trial court had properly dismissed the lawsuit for failure to exhaust statutory remedies. The court's opinion relied on a pre-

vious Superior Court ruling that the statutory provision permitting reconsideration of a peer review determination was mandatory and that the peer review procedure, once started, had to be exhausted before an action at law could be commenced in the courts.[1]

The opinion next addressed the issue of whether the trial court erred in dismissing the claim for punitive damages under section 8371. The court ruled that section 1797 of the Motor Vehicle Financial Responsibility Law is in conflict with the general remedies set forth in section 8371. Consequently, section 1797 provides the exclusive remedy for first-party benefit claims. This opinion did not cite or make any reference to the ruling of the Pennsylvania Superior Court in *Okkerse v. Prudential Property and Casualty Insurance Co.*

As I said previously, I will continue to follow *Knox* unless the Pennsylvania appellate court case law mandates a different result. The *Barnum* ruling does not mandate a different result for several reasons.

First, I cannot assume that *Barnum* overruled *Okkerse* because it never mentioned the *Okkerse* ruling. Furthermore, *Barnum* was decided shortly after *Okkerse,* and one panel of the Superior Court cannot overrule the decision of another panel.

Second, in *Barnum,* the insured was seeking first-party benefits following a peer review determination that the medical treatment was not medically necessary. Thus, the only issue before the court was whether a

---

1. *Barnum* was reversed and remanded by the Pennsylvania Supreme Court on November 30, 1994 at 539 Pa. 673, 652 A.2d 1319, as a result of its ruling in *Terminato v. Pennsylvania National Insurance Co.,* 538 Pa. 60, 645 A.2d 1287 (1994), which held that an insured is not required to request reconsideration of a peer review determination before proceeding to court.

section 8371 claim may be maintained where an insurance company relies on a peer review organization determination that the treatment was not medically necessary; the holding of the court was that where an insurance company "follows the PRO procedure, it cannot be subjected to damages for bad faith." *Id.* at 496, 635 A.2d at 159. This holding is consistent with my decision in *Knox* in which I ruled that section 1797(b) of the Financial Responsibility Law provides the exclusive remedy for claims that are denied based on findings of a peer review organization that treatment was not medically necessary or that it failed to conform to accepted professional standards. This would also appear to explain why Judge Hester, a member of the panel deciding *Barnum,* did not file a concurring or dissenting opinion.

Third, *Okkerse* and *Barnum* addressed separate issues. In *Okkerse,* the court was considering whether section 8371 conflicted with the No-Fault Act's equivalent of section 1716 of the Pennsylvania Motor Vehicle Financial Responsibility Law (which applies where claims are not submitted for a peer review evaluation) while in *Barnum,* the court (even though referring to section 1797(b)(5) and (6)), was, in fact, considering a matter that is not covered by section 1797(b)(5) and (6), namely a potential court determination in favor of the provider or the insured following a PRO determination in favor of the insurer.

For these reasons, I conclude that there are no appellate court rulings that are inconsistent with my ruling in *Knox v. Worldwide Insurance Group* permitting a section 8371 claim based on the denial of first-party benefit claims in those situations in which the insurance company has not obtained a PRO evaluation supporting a denial of coverage on the ground that the treatment

was not medically necessary or that it failed to conform to accepted professional standards.

## II.

This lawsuit is brought by a medical provider rather than by the insured. Nationwide contends that section 8371 applies only to an insured; it does not provide a cause of action to anyone other than "an insured." Section 8371 reads as follows:

"*Actions on insurance policies*

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date that the claim was made by the insured in an amount equal to the prime rate of interest plus three percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer."

Nationwide's argument is straightforward: the language of section 8371 requires that the insurer has acted in bad faith "toward the insured" in an action "arising under an insurance policy." A medical provider is not an insured, and its lawsuit is not a lawsuit arising under an insurance policy. Consequently, section 8371 has no applicability.

However, the issue of whether a medical provider can sue under section 8371 is more complicated than Nationwide would like it to be, because a medical provider for an auto accident victim is not a third party who has no relationship with the insurance company.

Ordinarily, the relationship between a medical provider who treats an accident victim and the accident victim is governed by contract law. The accident victim is billed at the provider's usual and customary charge unless the parties agree upon a different arrangement. If the accident victim is insured under an insurance policy or a health plan that may cover the treatment, the legal obligations of the insurance carrier or health plan extend only to the accident victim. The medical provider has no cause of action against the insurance company or health plan. In this situation, a medical provider would not be permitted to bring a cause of action for bad faith under section 8371 against the accident victim's insurance company or health plan because section 8371 applies only to "an action arising under an insurance policy," and under Pennsylvania law, the medical provider is not permitted to bring an action under the insurance policy. See *e.g., Strutz v. State Farm Mutual Insurance Co.,* 415 Pa. Super. 371, 609 A.2d 569 (1992), where the court held that persons injured in an auto accident could not bring a bad faith claim against an insurance company that had insured the other driver based on its failure to negotiate a settlement in good faith because the duty to negotiate in good faith is owed to the insured, not to a third-party claimant.

The Motor Vehicle Financial Responsibility Law alters the status of the accident victim, the insurance carrier responsible for providing first-party benefits, and the medical provider. Section 1797(a) limits the amount of money that a person providing medical treatment for an injury arising out of a motor vehicle accident may charge, request, or accept. This section also requires

medical providers to bill the insurance carrier for the amount payable; the provider may not bill the insured for the services or otherwise attempt to collect from the insured the difference between the provider's full charge and the amount paid by the insurer.

Section 1797(b) governs the situation in which the insurance company questions the reasonableness or necessity of the medical treatment. The insurance company is given two options: (1) the insurance company may deny payment or (2) the insurance company may seek an evaluation of a peer review organization for the purpose of determining whether the medical treatment conformed to professional standards of performance and was medically necessary. If the insurance company refuses to pay without submitting the provider's bill to a peer review organization, the provider may institute court proceedings for the payment of the bill. Section 1797(b)(4). If the court determines that the medical treatment was medically necessary, the insurer must pay to the provider the outstanding amount of the bill plus interest at 12 percent, costs, and all attorney's fees. Section 1797(b)(6).

If the insurance company submits the claim to a peer review organization, either the provider or the insurance company may seek a reconsideration of the peer review organization's initial determination. If the final peer review determination favors the provider, the insurance company must pay the provider the outstanding amount plus interest at 12 percent. If the peer review determination favors the insurance company, the medical provider may institute court proceedings to collect the unpaid bill. 31 Pa. Code §69.52(m).

If it is ultimately determined by a peer review organization or a court that the medical provider has provided unnecessary medical services or that future serv-

ices will be unnecessary, or both, the provider may not collect payment from anyone for the medically unnecessary treatment. Also, if the provider has been paid, it must return the amount paid plus interest at 12 percent. Section 1797(b)(7).

Under this statutory structure, the medical provider looks very much like the insured. The medical provider submits its bills to the insurance company rather than to the insured. The medical provider may never look to the person receiving treatment for payment of the bill. The medical provider is permitted to sue the insurance company if its bill is not paid.[2]

While a medical provider's claims against the insurance company that provides automobile insurance to the person who received the medical treatment are statutory, the insurance company's statutory obligations arise out of the insurance policy that provides for the payment of first-party benefits. Consequently, I would not be torturing the language of section 8371 by ruling that "an action arising under an insurance policy" encompasses the statutory claim of a medical provider against the insurance company insuring the person who received the medical treatment. See *Monticello Insurance Co. v. Spinning Wheels Inc.,* 144 P.L.J. 488 (1996), where I ruled that section 8371 does not cover a lawsuit

---

2. The insured is also permitted to sue the insurance company that has failed to pay first-party benefits. See *Lehman v. State Farm Insurance Co.,* 140 P.L.J. 78, 85 (1992) (frequently, from a financial standpoint, it makes sense for the medical provider to give up on a claim that the insurance company refuses to pay and to terminate treatment rather than to institute litigation—the insured, on the other hand, will have a substantial incentive to challenge the denial of the claim because of his or her perceived need for substantial treatment in the future).

involving premium disputes because the Act should be construed by considering legislative purposes.

Neither the parties nor my staff found any Pennsylvania case law that has addressed the issue of whether a medical provider may bring a bad faith claim because of its special status under the Motor Vehicle Financial Responsibility Law. There are a limited number of cases in other jurisdictions which have addressed common-law or statutory bad faith claims brought by medical providers or other third parties.

In 1979, the Supreme Court of California in *Royal Globe Insurance Co. v. Superior Court of Butte County,* 592 P.2d 329 (Cal. 1979), overruled by *Moradi-Shalal v. Fireman's Fund Insurance Companies,* 758 P.2d 58 (Cal. 1988), held that an individual who is injured by the negligence of another may sue the negligent party's insurer for a violation of provisions of the Insurance Code, Unfair Practices Act imposing a duty on insurance companies to make a good faith effort to effect prompt and fair settlements of claims when liability has become reasonably clear. The decision was based primarily on language in the legislation which, according to the court, appeared to provide protection to both insureds and claimants. The most significant aspect of this opinion was a ruling permitting private actions to be brought pursuant to this Act.

In 1988, in *Moradi-Shalal v. Fireman's Fund Insurance Companies, supra,* 758 P.2d 58, the California Supreme Court overruled *Royal Globe Insurance Co.* It relied on the opinions of other state courts that almost uniformly have ruled that the Unfair Practices Act does not create a private cause of action against insurance companies that commit unfair practices enumerated in this legislation.

This opinion only briefly addressed the portion of the *Royal Globe* opinion which ruled that an insurance company owes a duty of good faith to third-party claimants. The court said that this "tends to create a serious conflict of interest for the insurer, who must not only protect the interests of its insured, but also must safeguard its own interests from the adverse claims of the third-party claimant. This conflict disrupts the settlement process and may disadvantage the insured." *Id.* at 67.

In *CNA Insurance Co, v. Scheffey,* 828 S.W.2d 785 (Tex. Ct. App. 1992), a physician sued a workers' compensation insurer for failure to pay and settle claims which he submitted for treatment of workers covered by the workers' compensation policy. The court held that no Texas courts have extended the insurer's duty of good faith and fair dealing to persons in the plaintiff's position—the plaintiff did not have any special relationship with the workers' compensation carrier and he was not a person to whom the carrier owed a duty of good faith and fair dealing.

*McFadden v. Liberty Mutual Insurance Co.,* 803 F. Supp. 1178 (N.D. Miss. 1992), *aff'd,* 988 F.2d 1210 (5th Cir. 1993), also considered a bad faith action brought by a physician against a workers' compensation carrier for refusal to pay for services furnished to employees covered by the workers' compensation policy. The court cited *Scheffey* in support of its decision that a medical provider was not a person to whom the insurer owed a duty of good faith and fair dealing. The court said:

"Already, three of plaintiff's bad faith lawsuits against different workers' compensation carriers have arrived in federal court. Giving third-party claimant physicians standing to bring independent bad faith tort claims would open the door to an onslaught of endless litigation when-

ever a medical care provider received anything less than the full charge requested of the compensation carrier." *McFadden, supra,* 803 F. Supp. at 1185.

In *Fry v. Atlantic States Insurance Company,* 700 A.2d 974 (Pa. Super. 1997), the court ruled that an injured employee could not bring a section 8731 suit against her employer's workers' compensation carrier because of the exclusivity provisions of the Workers' Compensation Act. The court's opinion included the following dicta:

"Accordingly, the 'good faith' legislation does not apply, and would not even if our conclusion as to appellant's major premise were different. As the language of section 8371 makes clear, the statute controls to actions brought against an insurer by an insured *under the terms of a policy.* The proposed conjunction of the WCA with the good faith act has been explored by the third circuit in *Winterberg v. Transportation Insurance Co.,* 72 F.3d 318 (3rd Cir. 1995). While its decisions are not controlling in this court, its conclusions are nevertheless illuminating. The circuit court found that '[a] workmen's compensation claim is not "based on an insurance policy" within the meaning of section 8371. The claim is statutory and has its genesis in the contract of hire between the employer and employee, 77 Pa.[C.]S. §431, not an insurance contract. The employer's obligation to pay for a compensable injury is not predicated upon an insurance policy.' *Id.* at 325 n.4. We would add, moreover, that the section requires the insurer to have acted in bad faith toward the *insured,* that is, if anybody, the employer not the employee." *Fry, supra,* 700 A.2d at 977. (emphasis in original) (footnote omitted)

The purpose of section 8371 is to create an economic disincentive for breaching the duty to deal fairly and in good faith with the insured. Since the insured under a motor vehicle policy can bring a section 8371 bad faith claim against his or her insurance company for the refusal without reasonable justification to pay the bills of a medical provider, a ruling that does not permit medical providers to sue under section 8371 does not undermine the purposes of the Motor Vehicle Financial Responsibility Law. In situations that do not involve a motor vehicle accident, as a practical matter medical providers usually look to an insurance company or health plan rather than to the patient for payment of medical services. In these situations, medical providers cannot bring bad faith claims against the insurance company or health plan that refuses to pay. Instead, they must rely on the section 8371 remedies afforded the patient as the inducement for paying their bills.

The purpose of section 8371 is to protect the insured. It is not necessary to include medical providers who treat an auto accident victim within the scope of section 8371 in order to encourage these providers to provide treatment to auto accident victims. While limits are placed on the charges that the provider may impose, this is equally true where treatment is being provided in other situations in which the provider will be paid from sources such as private insurance, HMOs, or government health programs. The provider of medical treatment to an auto accident victim is, in fact, in a more favored position because of the provisions within the Financial Responsibility Law that permit the medical provider to sue the patient's insurance company, that provide for 12 percent interest and counsel fees where the claim has been denied without a PRO evaluation,

and that give the medical provider the opportunity for a PRO reconsideration of an unfavorable initial evaluation.

An interpretation of section 8371 that permits a medical provider to bring a bad faith action against the insured's insurance company may be inconsistent with the interests of the insured—*i.e.,* the person whom section 8371 is intended to protect. In a high percentage of situations in which there are disputes between the insured and the insurance company, the insured never brings a section 8371 suit. Usually, an insured wants to settle his or her various claims, including claims for unpaid medical bills, wage loss claims, and future medical benefit claims, in a single settlement agreement. The insurance company also wants to resolve the claims in a single agreement and to close its file. In many instances, it is the threat of the section 8371 suit coupled with the insured's willingness to waive his or her section 8371 claims if the other claims are resolved satisfactorily that is the impetus for resolving the claims in a manner that is satisfactory to the insured. This means that the insured must be able to control the section 8371 litigation.

Also, there are instances in which there is a disagreement between the insured and the medical provider over the reasonableness and necessity of the care. In this instance, the insurance company's refusal to pay the medical bill works to the advantage of the insured because any payment that is made will reduce the amount of coverage that is still available. Consequently, in this instance, the insured would not want the medical provider to be able to use the leverage of a section 8371 lawsuit to encourage payment.

If I were to allow providers to sue for bad faith, from the insurance company's standpoint, section 8371

would become far more oppressive. *Bennett v. State Farm Fire & Casualty Insurance Co., supra,* 890 F. Supp. 440 (where the court ruled that neither the insured nor health care providers have causes of action under section 8371 for the denial of first-party medical benefits) involved 11 entities that had provided medical services to the insured. If each entity could bring a separate lawsuit seeking punitive damages under section 8371, the improper handling of a single injury could result in 11 punitive damage awards rather than the one award where only the insured can sue.

The relationship between the person injured in an auto accident and the insurance company responsible for paying first-party benefits is a finite relationship, meaning that it will last for a limited time and will involve only a limited number of providers. Consequently, a bad relationship between the insured and the insurance company will probably result in only one bad faith claim. However, a bad relationship between an insurance company and, for example, a chiropractic service that specializes in treating victims of auto accidents can go on indefinitely and involve hundreds of bad faith claims.

In Part I of this opinion, I rejected the argument that the legislature wanted a different set of rules for first-party benefit claims. I concluded that the legislature intended for section 8371 to apply across the board to all insurance claims. For other insurance claims, only the insured may bring a section 8371 claim so, at the most, the insurance company is looking at a single bad faith award arising out of the manner in which it is handling claims based on one injury. There is no reason why the legislature would have intended a different result where the claims arise out of an automobile accident.

For these reasons, I enter the following order of court:

### ORDER

On October 6, 1997, it is hereby ordered that defendant's preliminary objections seeking dismissal of plaintiff's bad faith claims are sustained and these claims are dismissed with prejudice. Arbitration hearing on October 31, 1997 at 9 a.m.