157 P.3d 561

**Emerson M.F. JOU, M.D., And As To Some Claims, On Behalf Of The Class of Others Similarly Situated, Plaintiff–Appellant,**

v.

**NATIONAL INTERSTATE INSURANCE COMPANY OF HAWAII, A Corporation; ADP Integrated Medical Solutions, An Entity, Form Unknown; and Nelson B. Befitel, Director, Department of Labor, State of Hawaii, Defendants–Appellees,**

**and**

**John Doe 1 to 10; Doe Corporation 1 to 10; Doe Partnership 1 to 10; and Doe Governmental Entity 1 to 10, Defendants.**

**No. 26204.**

Intermediate Court of Appeals of Hawai'i.

April 16, 2007.

Certiorari Rejected Sept. 20, 2007.

Stephen M. Shaw, on the briefs, for Plaintiff–Appellant.

Kevin P.H. Sumida, James H. Monma (Matsui Chung Sumida & Tsuchiyama), Honolulu, on the briefs, for Defendant–Appellee, National Interstate Insurance Company of Hawaii and National Interstate Insurance Company.

Frances E.H. Lum, Robyn M. Kuwabe, Deputy Attorneys General, Department of the Attorney General, State of Hawaii, on the briefs, for Defendant–Appellee, Nelson B. Befitel, Director of Labor and Industrial Relations.

George W. Playdon, Jr., Kelvin H. Kaneshiro (Reinwald, O'Connor & Playdon LLP), Honolulu, on the briefs, for Defendant–Appellee, ADP Integrated Medical Solutions.

WATANABE, Presiding Judge, FOLEY, and NAKAMURA, JJ.

Opinion of the Court by NAKAMURA, J.

This case arises out of a $1,955.49 dispute between a physician and a workers' compensation insurance carrier over amounts billed for the treatment of an injured worker. Plaintiff–Appellant Emerson M.F. Jou, M.D., (Dr. Jou), who was doing business as Comprehensive Clinic of Rehabilitation Medicine, submitted bills to National Interstate Insurance Company (National) seeking payment for treatments provided to the worker. Defendant–Appellee ADP Integrated Medical Solutions (ADP) reviewed Dr. Jou's bills and recommended that National not pay the amounts charged for massage therapy because Dr. Jou did not have a massage establishment license. National paid Dr. Jou $340.40 for amounts he charged for office/outpatient visits but did not pay Dr. Jou the $1,955.49 he charged for massage therapy.

Dr. Jou filed a First Amended Complaint in Tort for Interference, Insurer Bad Faith, and Class Action (first amended complaint) against National's subsidiary, Defendant–Appellee National Interstate Insurance Company of Hawaii (National–Hawaii), ADP, and Defendant–Appellee Nelson B. Befitel, in his capacity as the Director of the Department of Labor and Industrial Relations for the State of Hawai'i (the Director). Dr. Jou sued National–Hawaii for the tort of insurer bad faith arising out of its refusal to pay his bills for massage therapy (Count 2–A) and requested an accounting or tracing of National–Hawaii's corporate structure (Count 8). He sued both National–Hawaii and ADP for tortious interference with contract or prospective business advantage (Counts 1 and 2), reckless supervision or hiring of employees or subsidiaries (Count 5), civil conspiracy (Count 6), and negligence (Count 7). Dr. Jou also sought class certification for all similarly situated medical providers in Hawai'i, who he claimed were third-party beneficiaries of workers' compensation insurance policies issued by National–Hawaii; a declaration that National–Hawaii and ADP have an obligation of good faith and fair dealing that extends to medical providers; and an injunction precluding National–Hawaii and ADP from violating this obligation (Counts 3 and 4). Finally, Dr. Jou sued the Director seeking a declaration that any rule promulgated by the Department of Labor and Industrial Relations (DLIR) that purports to require the exhaustion of administrative remedies before

a suit in tort for insurer bad faith can be filed was invalid (Count 9).

■ The Circuit Court of the First Circuit (circuit court)[1] granted motions to dismiss the first amended complaint as against National and National–Hawaii, ADP, and the Director. With respect to the joint motion to dismiss filed by National and National–Hawaii, the circuit court granted the motion because the court concluded that Dr. Jou had failed to exhaust his administrative remedies prior to filing suit.[2] In dismissing for failure to exhaust administrative remedies, the circuit court focused on Dr. Jou's claim of insurer bad faith and treated his remaining claims as derivative of his bad faith claim. The circuit court also denied two motions for summary judgment filed by Dr. Jou.

Dr. Jou appeals from the Judgment filed on October 30, 2003, in the circuit court. The Judgment was entered against Dr. Jou and in favor of National, ADP, and the Director on all claims alleged in the first amended complaint. On appeal, Dr. Jou contends that the circuit court erred in: 1) granting National's motion to dismiss his bad faith tort claim for failure to exhaust his administrative remedies; 2) granting ADP's motion to dismiss his claims against ADP; 3) granting the Director's motion to dismiss Dr. Jou's claim for declaratory relief regarding the DLIR's administrative rules; and 4) denying both of Dr. Jou's motions for summary judgment. We affirm the Judgment.

1. The Honorable Sabrina S. McKenna presided.

2. In his initial complaint and his First Amended Complaint in Tort for Interference, Insurer Bad Faith, and Class Action (first amended complaint), Plaintiff–Appellant Dr. Emerson M.F. Jou (Dr. Jou) named National Interstate Insurance Company of Hawaii (National–Hawaii), but not its parent, National Interstate Insurance Company (National), as a defendant. Dr. Jou alleged in the first amended complaint that National and National–Hawaii were "liability shield[s]" for the Lindner family and asserted that all entities used by the Lindner family should be pierced and disregarded for purposes of the claims raised. Although National was not named as a defendant, it filed a joint motion with National–Hawaii to dismiss Dr. Jou's initial complaint. The parties later agreed that the joint motion to dismiss also applied to the first amended complaint. As one of the grounds for their motion, National and National–Hawaii argued that the underlying

## BACKGROUND

### I. Events Preceding Dr. Jou's Lawsuit

On April 6, 2000, Linda Miyake (Miyake) suffered a work-related injury while employed by Fantastic Sam's, a subsidiary of Fanfare Investments (Fanfare). Dr. Jou, who specializes in physical medicine, treated Miyake, and Dr. Jou's office provided Miyake with massage therapy from mid-April until late June of 2000. Dr. Jou subsequently submitted a bill for $2,295.53 to National, the workers' compensation insurance carrier for Fanfare. This bill was audited by ADP, which described itself as "an independent medical bill review company that compares medical bills to ... regulatory requirements (such as proper licensing for regulated services)." ADP recommended that National not pay Dr. Jou for the massage therapy services on the ground that he did not have a massage establishment license. National accordingly paid Dr. Jou only $340.04, the amount he billed for office/outpatient visits, and did not pay the $1,955.49 he billed for massage therapy.

On January 16, 2003, Dr. Jou submitted a letter to National demanding payment of the amounts he billed for massage therapy. In the letter, Dr. Jou advised National of a recent decision by the circuit court in a no-fault automobile insurance case that was favorable to his position that he did not need a

insurance policy had been issued by National, and thus National–Hawaii, as a non-party to the policy, could not be sued for bad faith. The Circuit Court of the First Circuit (circuit court) did not resolve the question of whether National–Hawaii was a proper party to be sued in dismissing the first amended complaint against both National and National–Hawaii.

It is possible for a subsidiary to be held liable for the actions of its parent. See Portfolio Financial Servicing Co. v. Sharemax.com, Inc., 334 F.Supp.2d 620, 626–27 (D.N.J.2004); NCR Credit Corp. v. Underground Camera, Inc., 581 F.Supp. 609, 612 (D.Mass.1984); FMC Finance Corp. v. Murphree, 632 F.2d 413, 420–23 (5th Cir.1980). It is not necessary for us to decide the question of whether National–Hawaii is a proper party to determine this appeal. Because, for purposes of this appeal, we do not distinguish between National and National–Hawaii, we will henceforth refer to both of them individually, interchangeably, and collectively as "National."

massage establishment license in order to obtain payment for massage therapy.[3]

## II. Procedural History in the Circuit Court

On January 31, 2003, two weeks after sending his demand letter, Dr. Jou filed a complaint (initial complaint) in the circuit court against National, ADP, and the Director. The first amended complaint followed shortly thereafter on February 13, 2003.

On March 7, 2003, ADP moved to dismiss the first amended complaint as against ADP, and on March 13, 2003, the Director moved to dismiss Count 9, the only count pertaining to the Director. After holding hearings on these motions, the circuit court, on April 23, 2003, filed orders dismissing the first amended complaint as against ADP and the Director.

On March 19, 2003, Dr. Jou filed a Motion for Summary Judgment (first MSJ) against National. On April 21, 2003, the circuit court held a hearing on this motion, and on May 7, 2003, the court entered an order denying Dr. Jou's first MSJ.

On April 25, 2003, Dr. Jou filed a second Motion for Summary Judgment (second MSJ) against National seeking "summary judgment, summary adjudication of issues, or orders compelling payment." Citing *Hough v. Pacific Ins. Co.*, 83 Hawai'i 457, 927 P.2d 858 (1996), Dr. Jou argued that 1) the circuit court had original jurisdiction over his insurer bad faith claim and 2) exhaustion of administrative remedies was not required for this claim. On May 2, 2003, National filed a motion to dismiss the initial complaint. National characterized Dr. Jou's initial complaint as arising out of a "billing dispute" and argued, among other things, that: 1) the Director, and not the circuit court, had original jurisdiction over the subject matter of Dr. Jou's lawsuit; 2) Dr. Jou was required to exhaust his administrative remedies by presenting his billing dispute to the Director

before filing suit; and 3) Dr. Jou was not an intended third-party beneficiary of the insurance contract between National and Fanfare (the injured worker's employer) and thus, Dr. Jou could not sue National in tort for bad faith.

On May 19, 2003, the circuit court held a hearing on Dr. Jou's second MSJ and National's motion to dismiss. At the hearing, the parties agreed that the court could consider their motions with respect to both the initial complaint and the first amended complaint. The circuit court did not decide whether Dr. Jou was entitled to sue on the theory of insurer bad faith, but it ruled on jurisdictional grounds that he had failed to exhaust administrative remedies prior to filing suit. The circuit court determined that Dr. Jou was required to exhaust his administrative remedies by obtaining a ruling from the Director on whether Dr. Jou was entitled to payment for the massage therapy services before Dr. Jou could raise a claim of insurer bad faith. The court treated the other claims Dr. Jou raised in his first amended complaint as derivative of his bad faith claim. The circuit court orally ruled as follows:

> At this time the Court is going to grant the motion to dismiss on failure to exhaust administrative remedies. This Court does not have jurisdiction over this claim as of yet.
>
> *Hough* is distinguishable. It dealt with a situation where Pacific was the work comp carrier for both potential employers, and it dealt with injuries outside the work injury.
>
> We are still dealing with the work injury here. Whether or not Mr. Jou is entitled to payment under workers' compensation policy for services rendered to an employee, he needs to go through the administrative remedies first.
>
> So at this time, the court is going to grant the defendant's motion to dismiss and deny the plaintiff's motion for summary judgment.

---

**3.** Dr. Jou was apparently referring to a decision made in *Dai–Tokyo Royal State v. Jou,* No. 01–1–1276. A copy of the *Dai–Tokyo* decision was not made part of the record. However, Dr. Jou's counsel represented at the hearing on National's

motion to dismiss that the circuit judge in *Dai–Tokyo* had ruled that a physician's license already ensures hygienic conditions and thus Dr. Jou did not need a massage establishment license to obtain payment for massage therapy.

The Court at this time also denies the motion to amend the first amended complaint on the grounds that it is premature, and it would be futile because administrative remedies have not been exhausted.

If the Court were to follow [Dr. Jou's counsel's] interpretation of the case law, we would be here at the first instance—we could be here at the first instance of every denial, each and every denial of payment under the worker's compensation policy to a provider, and I do not think that that is the law. So the motion is granted.

On July 18, 2003, the circuit court entered orders dismissing the first amended complaint against National and denying Dr. Jou's second MSJ.

On May 20, 2003, one day after the circuit court had orally ruled that it would dismiss the first amended complaint for failure to exhaust administrative remedies, National submitted a check to Dr. Jou in the amount of $1,955.49—the amount it initially withheld on the ground that Dr. Jou lacked a massage establishment license. On May 22, 2003, Dr. Jou filed a Motion for New Trial/Reconsideration, arguing that this payment constituted a concession by National that 1) Dr. Jou was entitled to payment and 2) National's decision not to pay him had been unreasonable. National responded that its payment was neither a concession of a fact in controversy nor an admission of wrongdoing. The circuit court entered an order denying Dr. Jou's motion on July 31, 2003. On October 30, 2003, the court entered Judgment in favor of National, ADP, and the Director.

### DISCUSSION

Dr. Jou's primary arguments on appeal are that 1) the circuit court erred in ruling that it lacked jurisdiction over his claim of insurer bad faith because he failed to exhaust administrative remedies and 2) he was entitled to sue in tort for insurer bad faith because, as a matter of law, he was an intended third-party beneficiary of National's workers' compensation insurance policy.

### I.

The Hawai'i Supreme Court first recognized the tort of insurer bad faith in the first-party insurance context in 1996 when it decided *Best Place, Inc. v. Penn America Ins. Co.*, 82 Hawai'i 120, 127, 920 P.2d 334, 341 (1996). Several months later, the court extended this cause of action to an employee seeking payment for workers' compensation benefits from a workers' compensation insurer. *Hough*, 83 Hawai'i at 468–69, 927 P.2d at 869–70.

In *Hough*, an employee injured his back while working for one employer and suffered a recurrence of that injury while working for a second employer. *Id.* at 460, 927 P.2d at 861. Both employers had the same workers' compensation insurance carrier. *Id.* Although the carrier acknowledged that one of the two employers was responsible for paying workers' compensation benefits relating to the recurrent injury, the carrier refused to pay under either employer's policy. *Id.* The employee filed an administrative claim with the Director who ordered the first employer and the insurance carrier to pay benefits to the employee. *Id.* at 461, 927 P.2d at 862. The employee then sued the insurance carrier, alleging that the carrier had acted in bad faith in processing his workers' compensation claim and that the carrier's bad faith caused him to suffer physical and emotional injuries. *Id.* at 462, 927 P.2d at 863.

The carrier argued that the employee's bad faith claim was barred by Hawaii Revised Statutes (HRS) § 386–5, the exclusivity provision of the Hawai'i workers' compensation law, and by HRS § 386–73, which gives the Director original jurisdiction over all controversies and disputes arising under HRS Chapter 386. The Hawai'i Supreme Court rejected the carrier's arguments, concluding that the employee's bad faith claim alleged injuries that were not " 'work injuries' within the meaning of HRS Chapter 386" and were "*outside* the course and scope of his employment." *Id.* at 465–66, 927 P.2d at 866–67. The court held that the employee's tort claim for insurer bad faith was not precluded by the exclusivity provision of HRS § 386–5 and that the Director did not have original juris-

diction over the claim under HRS § 386–73. *Id.*

We read *Hough* to mean that a bad faith cause of action against a workers' compensation carrier is originally cognizable in court and does not fall within the original jurisdiction of the Director under HRS Chapter 386. *See id.* at 468, 927 P.2d at 869. There is no jurisdictional impediment to bringing such an action in court. *See id.* at 466, 468, 927 P.2d at 867, 869. Therefore, the circuit court's reason for dismissing Dr. Jou's bad faith claim—lack of jurisdiction because Dr. Jou had failed to exhaust administrative remedies—was incorrect. *See Golden v. Employers Ins. of Wausau,* 981 F.Supp. 467, 472 (S.D.Tex.1997) (holding that the doctrine of exhaustion of remedies does not apply where the court has original jurisdiction over the claim).

*Hough* did not decide whether a physician, like Dr. Jou, who provides medical treatment to an injured worker, can sue a workers' compensation insurance carrier in tort for the carrier's alleged bad faith in processing the physician's payment request. The circuit court also did not resolve this question before it dismissed Dr. Jou's bad faith claim and his other claims against National for failure to exhaust administrative remedies.

If—and this is a big if—Dr. Jou has a cause of action in tort for bad faith against National, the circuit court should have applied the doctrine of primary jurisdiction. The primary jurisdiction doctrine applies to a claim that is originally cognizable in the courts but which requires the resolution of issues that are "within the special competence of an administrative agency." *Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); *Aged Hawaiians v. Hawaiian Homes Comm'n,* 78 Hawai'i 192, 202, 891 P.2d 279, 289 (1995). This doctrine allows the court to "refer" an issue to the administrative agency before proceeding with the suit. *Syntek Semiconductor Co. v. Microchip Technology, Inc.,* 307 F.3d 775, 782 n. 3 (9th Cir.2002). The United States Court of Appeals for the Fifth Circuit has articulated the following criteria for determining when courts should apply the primary jurisdiction doctrine:

(1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body.

*Northwinds Abatement, Inc. v. Employers Ins. of Wausau,* 69 F.3d 1304, 1311 (5th Cir.1995).

Under the primary jurisdiction doctrine, the court may stay the proceedings while an administrative agency decides predicate issues necessary to adjudicate a bad faith claim. *See Reiter,* 507 U.S. at 268, 113 S.Ct. 1213. This procedure avoids the danger that the statute of limitations on the bad faith tort claim may run before the administrative agency decides the predicate issues. For example, a two-year statute of limitations generally applies to tort actions in Hawai'i. *See* HRS § 657–7 (1993). Dr. Jou argues that if he was required to resolve disputes over payment through proceedings with the Director before filing suit on a bad faith tort claim, the statute of limitations may run before he could file suit.

Staying the proceedings conserves scarce judicial resources by allowing an administrative agency with expertise to decide the predicate issues. The agency's resolution of the predicate issues may reveal that there is no basis for a bad faith claim or may satisfy the plaintiff and obviate his or her need to further pursue the bad faith claim. Here, assuming Dr. Jou could sue for bad faith, the question of whether Dr. Jou was entitled to payment for his massage therapy services would be a necessary factual predicate to a decision by the circuit court on whether National acted unreasonably or in bad faith in its denial of and delay in payment. Dr. Jou's entitlement to payment for massage therapy services is a question that falls squarely within the special competence of the Director, and the Director has a dispute resolution process to address this type of question. *See* Hawai'i Administrative Rules (HAR) § 12–15–94(d).

A trial court has discretion in fashioning an appropriate remedy when applying the primary jurisdiction doctrine. As an alternative to staying the proceedings pending administrative resolution of predicate issues, the court has the discretion to dismiss the case without prejudice. *Reiter*, 507 U.S. at 268–69, 113 S.Ct. 1213. However, dismissal is an appropriate remedy only "if the parties would not be unfairly disadvantaged." *Id.* at 268, 113 S.Ct. 1213. In Dr. Jou's case, the circuit court did not consider whether Dr. Jou would be unfairly disadvantaged by the dismissal because it held, incorrectly, that dismissal was required on jurisdictional grounds for failure to exhaust administrative remedies.[4]

## II.

### A.

We now turn to the question of whether Dr. Jou has a cause of action in tort for bad faith against National. Obviously, if Dr. Jou does not have a bad faith cause of action against National, then the circuit court's entry of judgment in favor of National on the bad faith claim should be affirmed even if this was not the ground relied upon by the circuit court. *Kawamata Farms, Inc. v. United Agri Products*, 86 Hawai'i 214, 251, 948 P.2d 1055, 1092 (1997) (stating that where the lower court's decision is correct, it will not be overturned on the ground that the court gave the wrong reason for its ruling).

In *Best Place*, the Hawai'i Supreme Court noted that although Hawai'i law imposes a duty of good faith and fair dealing in all contracts, whether a breach of this duty will give rise to a bad faith tort cause of action depends on the duties inherent in a particular type of contract. *Best Place*, 82 Hawai'i at 129, 920 P.2d at 334. The court concluded that special characteristics distinguished insurance contracts from other contracts and justified the recognition of a bad faith tort cause of action for the insured in the context of first- and third-party insurance contracts.

*Id.* at 131–32, 920 P.2d at 345–46. These special characteristics included "[t]he public interest in insurance contracts, the nature of insurance contracts, and the inequity in bargaining power between the insurer and the policyholder...." *Id.* at 131, 920 P.2d at 345.

Regarding the nature of insurance contracts, the court pointed out that insurance contracts are atypical in that the insured ordinarily buys insurance seeking something more than commercial advantage or a profit; the insured seeks security, protection, and peace of mind. *Id.* at 128, 131, 920 P.2d at 342, 345. Accordingly, contract damages will seldom be adequate when the insurer fails to perform. *Id.* at 131, 920 P.2d at 345. With respect to unequal bargaining power, the court noted:

> In securing the reasonable expectations of the insured under the insurance policy there is usually an unequal bargaining position between the insured and the insurance company.... Often the insured is in an especially vulnerable economic position when such a casualty loss occurs.

*Id.* at 128, 920 P.2d at 342 (quoting *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866, 867–68 (1981)).

In *Simmons v. Puu*, 105 Hawai'i 112, 94 P.3d 667 (2004), the Hawai'i Supreme Court emphasized that the tort of bad faith, as adopted in *Best Place*, requires a contractual relationship between an insurer and an insured. *Simmons* 105 Hawai'i at 120, 94 P.3d at 675. The court stated, "*Best Place* noted that the *raison d'tre* of the tort of bad faith was to avoid depriving the insured of the *benefits for which he or she had contracted.*" *Id.* (brackets and internal quotation marks omitted). As part of its analysis, the court concluded that a person injured in a car accident could not sue the insured tortfeasor's insurance company for bad faith settlement practices absent an assignment of the insured tortfeasor's rights under the insurance policy. *Id.* at 122–23, 94 P.3d at 676–78. This is because the insurer's duty to settle

---

4. We note that in *Taylor v. Standard Insurance Co.*, 28 F.Supp.2d 588 (D.Hawai'i 1997), the court held that an employee was required to exhaust administrative remedies before suing a workers' compensation insurance carrier in tort for bad faith. *Id.* at 591–92. For the reasons set forth herein, we disagree with *Taylor*.

runs to the insured, not the injured third-party claimant. *Id.*

In *Hough*, the Hawai'i Supreme Court extended the bad faith tort cause of action to an injured employee who sued the workers' compensation insurance carrier of his two employers. The court explained its holding as follows:

Although our rulings in *Best Place* were directed toward the rights of the insured and not those of claimants, an employee is not merely a potential claimant in relation to his or her employer's workers' compensation insurance contract. An employee is an intended third-party beneficiary [fn] of an employer's contract with an insurance company for workers' compensation coverage.

The Workers' Compensation Act sets forth a compensation scheme that is based on a three-party agreement entered into by the employer, the employee, and the compensation carrier. . . . As between the compensation carrier and the employee, there is a promise for a promise: the carrier agrees to compensate the employee for injuries sustained in the course of employment, and the employee agrees to relinquish his common law rights against his employer. The employee is thus a party to the contract and therefore entitled to recover in that capacity.

*Aranda*, 748 S.W.2d at 212 (citations omitted.); *Franks v. United States Fidelity and Guar. Co.*, 149 Ariz. 291, 718 P.2d 193, 197 (Ct.App.1985) ("A claim by an injured employee against the workers' compensation carrier is a first-party claim."). *See also Dawes v. First Ins. Co. of Hawai'i, Ltd.*, 77 Hawai'i 117, 128 n. 12 883 P.2d 38, 49 n. 12 (recognizing non-contracting parties' rights as third party beneficiaries of an insurance contract), *reconsideration denied*, 77 Hawai'i 489, 889 P.2d 66 (1994); *Hunt v. First Ins. Co. of Hawai'i, Ltd.*, 82 Hawai'i 363, 367, 922 P.2d 976, 980 (App. 1996) (same), *cert. dismissed*, 83 Hawai'i 204, 925 P.2d 374 (1996).

Pacific [ (the workers' compensation carrier) ], therefore, owed contractual duties, express and implied, to Hough [ (the in-

jured employee) ], as an intended beneficiary of his employers' workers' compensation insurance contract. Accordingly, we hold that Hough may enforce these duties, *see Restatement (Second) of Contracts* § 304 (1981), including the duty to handle and pay claims in good faith. Under the rationale articulated in *Best Place*, a breach of the implied contractual duty of good faith gives rise to the independent tort cause of action for a third-party beneficiary, under the same standards and with the same limitations for punitive damages as discussed in *Best Place*, 82 Hawai'i at 132–34, 920 P.2d at 346–48.

---

[fn] An "intended beneficiary" is defined in *Restatement (Second) of Contracts*, § 302 (1981) as follows:

(1) Unless otherwise agreed between promisor and promissee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Hough*, 83 Hawai'i at 468–69, 927 P.2d at 869–70.

### B.

Relying on *Hough*, Dr. Jou argues that under the Hawai'i workers' compensation scheme, a physician who provides medical services to an injured employee is an intended third-party beneficiary of the employer's workers' compensation insurance contract. Dr. Jou therefore claims that, like the injured employee in *Hough*, a physician can sue the workers' compensation insurance carrier for bad faith. National counters that a physician is not a third-party beneficiary, but

merely an incidental beneficiary of the workers' compensation insurance contract, and thus has no right to assert a bad faith cause of action against the workers' compensation carrier.

 "[A] prime requisite to the status of 'third party beneficiary' under a contract is that the parties to the contract must have intended to benefit the third party, who must be something more than a mere incidental beneficiary." *Hunt v. First Ins. Co. of Hawaii, Ltd.*, 82 Hawai'i 363, 367, 922 P.2d 976, 980 (App.1996). The rights of the third-party beneficiary are limited to the terms of the promise, "and this promise may be express or it may be implied from the circumstances." *Id.* (quotation marks and brackets omitted).

National's motion to dismiss the first amended complaint[5] was brought pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b)(1) (lack of subject matter jurisdiction) and Rule 12(b)(6) (failure to state a claim upon which relief can be granted). In support of its motion, National presented matters outside the first amended complaint. This included the affidavit of Kelly J. Martins (Martins), a senior claims examiner for National. National relied upon the affidavit in arguing that the first amended complaint failed to state a claim upon which relief could be granted.

HRCP Rule 12(b) provides:

> If, on a motion asserting defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Dr. Jou did not object to the matters outside the first amended complaint that were presented by National. Nor did he seek a con-

tinuance pursuant to HRCP Rule 56(f) to obtain materials to oppose National's motion. Indeed, at the joint hearing held on National's motion to dismiss and Dr. Jou's second MSJ, Dr. Jou invited the circuit court to consider Martins' affidavit and to convert National's motion into a cross-motion for summary judgment. Because matters outside the pleading were presented to and not excluded by the circuit court, National's motion to dismiss was automatically converted into an HRCP Rule 56 summary judgment motion. *Gamino v. Greenwell*, 2 Haw.App. 59, 62, 625 P.2d 1055, 1058 (1981).

National's motion challenged Dr. Jou's entitlement to sue for bad faith. National asserted that Dr. Jou could not sue National in tort for bad faith because he was neither a named insured nor an intended third-party beneficiary under National's workers' compensation policy. In *First Hawaiian v. Weeks*, 70 Haw. 392, 772 P.2d 1187 (1989), the Hawai'i Supreme Court concluded that a defendant moving for summary judgment

> may discharge his [or her] burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his [or her] opponent. For if no evidence could be mustered to sustain the nonmoving party's position, a trial would be useless.

*Id.* at 396–97, 772 P.2d at 1190 (internal quotation marks, footnote, and citations omitted). In support of its analysis, the court cited *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), in which the United States Supreme Court, in construing Rule 56(c) of the Federal Rules of Civil Procedure, stated that the moving party is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her [or his] case with respect to which she [or he] has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

 In opposing National's motion and in pursuing his own motions for summary judg-

---

5. As previously noted, National filed a motion to dismiss Dr. Jou's initial complaint. The parties, however, agreed that National's motion to dismiss applied to the first amended complaint. For purposes of National's motion to dismiss, the differences between the allegations in Dr. Jou's initial complaint and those in the first amended complaint were not material. We discuss National's motion to dismiss as it applied to the first amended complaint.

ment, Dr. Jou chose to rely on the contention that, as a matter of law, he is an intended third-party beneficiary of National's worker's compensation insurance policy pursuant to the Hawai'i workers' compensation scheme. That contention also forms the crux of his argument on appeal. Therefore, we are confronted with the question of whether the Hawai'i workers' compensation scheme makes a physician (who treats an employee for work-related injuries) an intended third-party beneficiary of a workers' compensation insurance policy. That question is crucial to our determination of whether Dr. Jou can sue National for bad faith.[6]

There is no Hawai'i case that directly addresses whether a physician in Dr. Jou's position can sue a workers' compensation insurance carrier for bad faith. All the courts from other jurisdictions that have addressed this precise issue have held that physicians cannot sue workers' compensation insurance carriers for bad faith. *McFadden v. Liberty Mut. Ins. Co.*, 803 F.Supp. 1178, 1184 (N.D.Miss.1992), *aff'd*, 988 F.2d 1210, 1993 WL 82053 (5th Cir.1993); *CNA Ins. Co. v. Scheffey*, 828 S.W.2d 785, 791 (Tex.App. 1992); *Furno v. Citizens Ins. Co. of America*, 590 N.E.2d 1137, 1141 (Ind.App.1992).[7]

In *McFadden*, a physician sued a workers' compensation insurance carrier for bad faith refusal to pay for medical treatments the physician provided to an injured worker. *McFadden*, 803 F.Supp. at 1181. Like the Hawai'i Supreme Court, the Mississippi Supreme Court had earlier held that an injured employee could sue the workers' compensation insurance carrier of his or her employer

in tort for bad faith. *Id.* at 1183. The *McFadden* court, however, refused to extend the right to sue in tort for insurer bad faith to a physician providing treatment to an injured employee.

Plaintiff McFadden conveniently overlooks the Mississippi court's rationale for permitting an employee to assert an independent tort claim against his [or her] employer's insurer. For all intents and purposes, the employee is a primary party to the contract with standing to assert an independent tort claim. In contrast, a treating physician is merely an unintended third party creditor beneficiary of the contract. Moreover, his [or her] status is merely derivative. Although they may directly benefit, as a class, treating physicians are not intended beneficiaries of the MWCA [Mississippi Workers' Compensation Act].

*Id.* at 1184 (citations omitted).

In *Scheffey*, a physician sued a workers' compensation insurance carrier for bad faith. *Scheffey*, 828 S.W.2d at 787. The physician claimed that he was a third-party beneficiary under the policies the carrier had issued to employers and that the carrier had exercised bad faith in the settlement of claims the physician had submitted for treatment of employees of the insured employers. *Id.* The court held that the insurance carrier did not owe the physician any common-law duty of good faith and fair dealing and that the physician, therefore, was not entitled to sue the carrier for bad faith. *Id.* at 790. The court reasoned as follows:

A special relationship of trust arises between an insured and the insurer that

---

**6.** We note that the actual workers' compensation policy issued by National was not made part of the record. Because National's motion to dismiss was converted into a summary judgment motion, Dr. Jou had the burden of showing by affidavit or other means that there was a genuine issue for trial. Hawai'i Rules of Civil Procedure (HRCP) Rule 56(e). Dr. Jou chose to defend against National's motion on the basis that he qualified as an intended third-party beneficiary under the Hawai'i workers' compensation scheme as a matter of law. Dr. Jou did not argue in the circuit court and he does not argue on appeal that the actual insurance policy issued by National is relevant to whether he qualifies as a third-party beneficiary. He therefore waives any such argument. *State v. Ildefonso*, 72 Haw.

573, 584, 827 P.2d 648, 655 (1992); Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7).

**7.** Both *McFadden v. Liberty Mut. Ins. Co.*, 803 F.Supp. 1178, 1184 (N.D.Miss.1992), *aff'd*, 988 F.2d 1210, 1993 WL 82053 (5th Cir.1993), and *CNA Ins. Co. v. Scheffey*, 828 S.W.2d 785, 791 (Tex.App.1992), were decided under state laws that permitted an injured employee to sue a workers' compensation insurance carrier for bad faith. On the other hand, *Furno v. Citizens Ins. Co. of America*, 590 N.E.2d 1137, 1141 (Ind.App. 1992), was decided under Indiana law that does not permit an injured employee to sue a workers' compensation insurance carrier for bad faith.

imposes a duty on the part of insurers to deal fairly and in good faith with their insureds. The special relationship arises from the unequal bargaining power of the parties and the nature of the insurance contract that would allow an unscrupulous insurer to take advantage of its insureds' misfortunes when bargaining for settlement or resolution of claims. Scheffey [(the physician)] sought to base his suit on a special relationship which arose between [the insurance carrier] and himself.

The [Texas] Workers' Compensation Act contemplates a three-party agreement entered into by the employer, the employee, and the compensation carrier, and the insurance carrier has a duty to deal fairly and in good faith with injured employees in processing of claims. Furthermore, when a person contracts with an insurer *for the benefit of another*, both the person contracting and the third party may expect that the insurer would owe the same duty to the designated third party as it would to the person making the contract. Scheffey contends that, as a physician of choice to [the insurance carrier's] third-party insureds—the employees of the companies insured by [the insurance carrier]—he is in such close nexus with the injured employees that he is entitled to the same status as a third-party beneficiary to the insurance contract. No Texas court has extended the insurer's duty of good faith and fair dealing to persons in Scheffey's position. Scheffey did not have any special relationship with [the insurance carrier], and he was not a person to whom [the insurance carrier] owed a duty of good faith and fair dealing.

*Id.* at 790–91 (citations omitted).

We agree with the reasoning of *McFadden* and *Scheffey*. We conclude that there is nothing inherent in Dr. Jou's status as a physician who provided treatment to the injured employee that entitles him to sue National in tort for bad faith. In *Hough*, the Hawai'i Supreme Court quoted with approval the following passage from *Aranda v. Ins. Co. of North America*, 748 S.W.2d 210, 212

(Tex.1988), which described the Texas Workers' Compensation Act as setting forth

a compensation scheme that is based on a *three-party agreement entered into by the employer, the employee, and the compensation carrier.* ... As between the compensation carrier and the employee, there is a promise for a promise: the carrier agrees to compensate the employee for injuries sustained in the course of employment, and the employee agrees to relinquish his [or her] common law rights against his [or her] employer. The employee is thus a party to the contract and therefore entitled to recover in that capacity.

*Hough,* 83 Hawai'i at 468, 927 P.2d at 869 (emphasis added). Neither *Hough* nor *Aranda* included physicians in the three-party agreement.

The purpose of the Hawai'i Worker's Compensation law is to compensate employees for work-related injuries, not to compensate physicians. *See Alvarez v. Liberty House, Inc.,* 85 Hawai'i 275, 278, 942 P.2d 539, 542 (1997). HRS § 386–124 (1993) requires workers' compensation insurance policies to "cover the entire liability of the employer to the employer's employees covered by the policy or contract[.]" HRS § 386–124 further requires that

[t]he policy also shall contain a provision setting forth the right of the employees to enforce in their own names either by filing a separate claim or by making the insurance carrier a party to the original claim, the liability of the insurance carrier in whole or in part for the payment of compensation.

HRS § 386–124 does not require insurance policies to contain similar provisions directed at protecting physicians.

It is true that physicians who choose to participate in the workers' compensation scheme are required to follow certain rules, such as not directly charging the injured worker for treatments rendered for compensable injuries and submitting billing disputes to the Director for resolution. *See* HRS § 386–21(g) (Supp.2006);[8] HAR §§ 12–15–

8. This subsection was originally numbered HRS § 386–21(f) when it was enacted in 1998. *See*

85(a) and 12–15–94. However, unlike employees who are required by statute to participate in the workers' compensation scheme and forced to give up their right to sue their employer for work-related injuries, the physicians' participation in the scheme is not mandatory.

In the context of the Hawai'i workers' compensation scheme, a physician is an incidental beneficiary rather than an intended third-party beneficiary of the employer's workers' compensation insurance policy. In providing workers' compensation insurance coverage, the insurer promises the employer that the insurer will pay benefits owed by the employer to injured employees. This promise incidentally benefits the physician to the extent that the physician provides treatment for which the employer is required to pay. We conclude that Dr. Jou is not an intended third-party beneficiary of National's insurance policy and does not have a cause of action in tort for bad faith against National.

### C.

The only issue before the court in *Hough* was whether an injured employee could sue a workers' compensation insurer for bad faith. There is language in *Hough*, however, that can be read as extending the right to sue a workers' compensation carrier for bad faith to *any* intended third-party beneficiary of the policy, not just the injured employee.

Pacific [ (the workers' compensation carrier) ], therefore, owed contractual duties, express and implied, to Hough [ (the injured employee) ], as an intended beneficiary of his employers' worker's compensation insurance contract. Accordingly, we hold that Hough may enforce these duties, *see Restatement (Second) of Contracts* § 304 (1981), including the duty to handle and pay claims in good faith. Under the rationale articulated in *Best Place*, a breach of the implied contractual duty of good faith *gives rise to the independent tort cause of action for a third-party beneficiary,* under the same standards and with the same limitations for punitive damages

HRS § 386–21(f) (Supp.1998).

as discussed in *Best Place*, 82 Hawai'i at 132–34, 920 P.2d at 346–48.

*Hough*, 83 Hawai'i at 469, 927 P.2d at 870 (emphasis added).

Even assuming, *arguendo*, that a physician could qualify as an intended third-party beneficiary, not all of the special circumstances that warranted extending the tort of bad faith to insureds and to injured employees in the workers' compensation context would support an extension to physicians. Unlike a typical insured, a treating physician is seeking commercial gain from the insurer rather than security, protection, and peace of mind. Moreover, unlike an injured employee or an insured who has suffered a casualty loss, a physician is not likely to be at a disadvantage because he or she is "in an especially vulnerable economic position" when seeking payment from an insurer. *Best Place*, 82 Hawai'i at 128, 920 P.2d at 334. Thus, while being an intended third-party beneficiary may be a necessary condition for a non-party to the insurance policy to sue the insurer for bad faith, it may not be a sufficient condition for such a suit.

The unique relationship between an employee and a workers' compensation insurer is further shown by the decisions from Texas and Arizona that the *Hough* court cited in support of its decision to extend the bad faith tort cause of action to injured employees in the workers' compensation context. The Texas and Arizona decisions did not rely on conventional intended third-party beneficiary analysis to extend the bad faith cause of action to injured employees. Instead, by virtue of the workers' compensation scheme, the courts in those cases viewed the injured employee as an *actual* party to the workers' compensation insurance policy. *See Aranda*, 748 S.W.2d at 212 (describing the Texas Workers' Compensation Act as contemplating a "three-party agreement entered into by the employer, employee, and the [workers'] compensation carrier"); *Franks v. United States Fidelity and Guar. Co.*, 149 Ariz. 291, 718 P.2d 193, 197 (Ct.App.1985) (characterizing a claim by an injured employee against the workers' compensation carrier as a "first-party claim" in Arizona).

Neither Dr. Jou nor National addresses the question of whether qualifying as an intended third-party beneficiary of a workers' compensation policy is, in itself, sufficient to permit one to sue the insurer for bad faith or whether something more is necessary. Because we conclude that Dr. Jou does not qualify as an intended third-party beneficiary of National's workers' compensation policy, we do not reach this question.

### D.

For the foregoing reasons, we conclude that the circuit court was correct in entering judgment against Dr. Jou and in favor of National on Dr. Jou's bad faith claim. Dr. Jou does not argue on appeal that any of the other claims in his first amended complaint would survive if his bad faith claim is precluded. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) (2006) ("Points not argued may be deemed waived."). We therefore affirm the circuit court's entry of judgment against Dr. Jou and in favor of National on all claims in the first amended complaint.[9]

### III.

Dr. Jou did not present any discernable argument in his opening brief on his point of error that the circuit court erred in granting the Director's motion to dismiss. He therefore waived that point of error, and we accordingly affirm the circuit court's dismissal of Dr. Jou's claims against the Director. *See* HRAP Rule 28(b)(7) (2006). To the extent that Dr. Jou argued that the circuit court erred in granting ADP's motion to dismiss, we conclude that his arguments are without merit. We therefore affirm the circuit court's dismissal of Dr. Jou's claims against ADP.

### CONCLUSION

We affirm the October 30, 2003, Judgment of the circuit court which entered judgment against Dr. Jou and in favor of National, ADP, and the Director on all claims alleged in the first amended complaint.

---

9. We conclude that the circuit court properly denied Dr. Jou's first motion for summary judgment filed on March 19, 2003, in which he asked the court to enter judgment in his favor on his bad faith claim against National. With respect to Dr. Jou's second motion for summary judgment filed on April 25, 2003, we agree with his arguments that a bad faith cause of action against a workers' compensation insurance carri-

er is originally cognizable in circuit court and does not fall within the original jurisdiction of the Director of the Department of Labor and Industrial Relations under HRS Chapter 386. Those arguments, however, are ultimately of no avail to Dr. Jou because we conclude that Dr. Jou does not have a cause of action in tort for bad faith against National.